**Wilbur BUFF, Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 85, Docket 72-2372.**

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1974.

Decided April 5, 1974.

William A. Friedlander, Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Ernest J. Brown and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for appellant.

Robert D. Heyde, Washington, D. C., for appellee.

Before MOORE, HAYS and OAKES, Circuit Judges.

MOORE, Circuit Judge:

Between January 1 and June 7, 1965, appellee, who was employed as a bookkeeper, embezzled approximately $22,000 from his employer, S & D Meats, Inc. Appellee's crime was discovered by his employer in June, 1965. Appellee immediately confessed. Then, at his employer's insistence, appellee signed an affidavit of confession of judgment for the embezzled amount, plus interest, agreed to continue his employment, and to repay $25 per week from his paycheck. He also borrowed $1,000 from a bank, paying over the proceeds from the loan to his employer. However, in July, 1965, the employer became dissatisfied with this arrangement, discharged appellee, and filed the affidavit whereupon judgment was entered in his favor.

The Commissioner (appellant) determined that appellee, a cash-basis taxpayer, had received as income in 1965 the sum he had embezzled minus the sums he had returned in that year. While there was no doubt that embezzled funds constitute income, James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L. Ed.2d 246 (1961), the taxpayer contended that since he had agreed to repay the entire amount embezzled, the transaction should be seen to be in the nature of a loan—his debt exactly equalling his receipts. The Tax Court agreed with the taxpayer, relying in large part on the case of United States v. Merrill, 211 F.

2d 297 (9th Cir. 1954). *See also* J. W. Gaddy, 38 T.C. 943 (1962), reversed in part on other grounds, 344 F.2d 460 (5th Cir. 1965). In the *Merrill* case, a cash-basis taxpayer received in 1940 from his wife's estate, for his services as executor, an overpayment of $7,500. That same year the error was discovered and "appropriate adjustments were made in his own books and those of his wife's estate. . . ." 211 F.2d at 303–304. Actual repayment of the sum, however, was not made until 1943. The Commissioner assessed income tax on the $7,500 under the claim of right doctrine. North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). This doctrine holds that monies received by a taxpayer under a "claim of right" are taxable to him as income in the period of receipt even though it is eventually discovered that he was not entitled to the funds and makes restitution in some later period. The court in *Merrill* held that there had been no taxable income in 1940:

> We think there is no warrant for extending the harsh claim of right doctrine to such a situation. In such case [where the error is discovered in the same fiscal year] the Internal Revenue Bureau is not faced with the problem of deciding the merits of the claims to the funds received, for the question has been resolved by the interested parties. No question is here raised as to the *bona fides* of appellee's 1940 bookkeeping entries relative to the mistaken payments. Good faith is indicated by the fact that the taxpayer's $7500 obligation to the estate was not only recognized by him in 1940 but was paid in cash in 1943.

211 F.2d, at 304.

The Tax Court in this case analogized the present situation of embezzlement and judgment with the *Merrill* case:

> Where there is "consensual recognition" of indebtedness within the same taxable year, formalized by a confession of judgment, such a transaction does not result in the realization of taxable gain.

68a.

Seven judges of the Tax Court dissented from this decision in two opinions. These dissents and the brief of the Commissioner in this court raise three arguments for reversal.

The first broadly attacks the *Merrill* doctrine as the embodiment of an error in accounting. It is contended that it is improper to allow a cash-basis taxpayer to balance for tax purposes the receipt of income with a promise—not given in connection with the receipt—to repay in a later tax period. This argument would have us dispute the validity of such an exception to the claim of right rule.

The second argues that the criminal nature of the initial receipt in this case should exclude it from the sweep of *Merrill*. It is claimed that the lack of consensual recognition of an obligation to repay at the time of receipt is the crucial element to consider for the purposes of James v. United States, *supra*, rather than the presence of that recognition at the end of the pertinent accounting period. *James*, which, as was stated above, held embezzled funds to be income, distinguished embezzlement from a loan arrangement by stating that, although the embezzler has an obligation in law to repay the misappropriated funds, he lacks the consensual recognition of this obligation. 366 U.S. at 219–220. *James*, however, is silent as to the precise moment a court should inquire as to the presence or absence of this recognition.

The third attack made on the decision below proposes that the confession of judgment should be viewed as a mere sham. As such it should not be of tax significance and should be given no weight in the determination of appellee's income.

The facts of *Merrill* are so different from those now before us that the decision there is neither dispositive nor au-

thoritative in this case. Here there was no offsetting payment or promise to pay of any value.

As was found by the Court, seven years have passed without any payment on the judgment. We agree that "the judgment was not worth the paper it was written on. . . ." (Hoyt, J., dissenting opinion in which six judges joined). Further it is clear that this was true at the time of its creation and was not ascribable to events then in the future. There would be no logic in finding in this document a significance it did not contain and to allow it to balance $22,000, taken in cash, would be wholly unrealistic. The *Merrill* case itself placed weight on the *bona fides* of the intent to repay and the fact of actual repayment. 211 F.2d at 304. Such circumstances are very much in absence here.

The decision of the Tax Court is, therefore, reversed.

OAKES, Circuit Judge (concurring):

While I agree with the majority that United States v. Merrill, 211 F.2d 297 (9th Cir. 1954), is readily distinguishable, I do not think that we need give *Merrill* any precedential value in this circuit. In my view, *Merrill* was erroneously decided, perhaps because it was a point decided without the benefit of adversary argumentation.[1]

I believe *Merrill* runs contrary to the theory underlying the concept of annual accounting, at least in the case of cash basis taxpayers. The whole purpose of treating each tax year separately is so as to affect only the timing of the tax consequences for a given transaction: where a taxpayer concludes a particular transaction in Year One he will receive the tax treatment prescribed therefor in that year, while a second taxpayer who concludes the same transaction in Year Two will receive that same tax treatment in the second year. Thus, at the end of two years the two taxpayers will be equal, each having the same tax treatment in the appropriate tax year in respect to identical economic events. If Taxpayers A and B each receive money erroneously in January of Year One, but Taxpayer A assumes an obligation to repay in December of Year One and Taxpayer B assumes such an obligation in January of Year Two, at the end of the second year the two taxpayers have done exactly the same things and are in the same economic position with the result that equitably and otherwise they should be in the same position taxwise. *Merrill*, however, puts Taxpayer A in a different position; he pays no tax on the receipt of income while Taxpayer B must pay a tax (in Year One) and is denied any offsetting deduction. Nor is it any answer to say that Taxpayer B can ultimately expect to be brought into equality if and when B effects repayment; A is in the favored position under *Merrill* because *Merrill* treats the income as not being received merely on the basis of A's agreement to repay *whether or not that agreement is in fact performed.*

In short, giving credence in the case of a cash basis taxpayer to an agreement to repay, whether in the same year of receipt, is a gross misuse of the annual accounting concept; a repayment agreement per se should be viewed as a nullity for tax purposes. It should make no difference whether the amount was received illegally or under a "claim of right"; the subsequent agreement to repay should have no tax consequences. North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613 (1932), which contains the most familiar statement of the "claim of right" doctrine, is of course not to the contrary; all that doctrine does is establish that income received under a claim of right without restriction as to disposition is taxable in the year received and that a subsequent obligation to refund

---

[1]. This argument in *Merrill* was made for the first time on appeal by the taxpayer in his answering brief. The Commissioner filed no reply brief, simply arguing that the point could not be raised for the first time on appeal. *See* 211 F.2d at 302–303.

that income entitles the taxpayer to a deduction in the year actually refunded. *See* § 1341, Int.Rev.Code of 1954.[2]

To sum up, I see no reason to distinguish *Merrill*; I would decline to follow it in any event. Since I reach the same result of the majority, I happily join with it in voting to reverse the Tax Court.

2. The mere acknowledgment of the erroneous nature of the receipt and of the obligation to repay will not support a deduction except to the extent and in the year when repayment is actually effected. *Cf.* Helvering v. Price, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836 (1940) (guarantor's loss deductible only in year in which funds are actually paid over); Whitaker v. Commissioner, 259 F.2d 379, 382 (5th Cir. 1958) (prepayment of stud fee contingent on birth of live foal constitutes income in year in which prepayment made). *Merrill*, of course, established a special exception to this rule where the obligation to repay becomes fixed before the end of the year in which the amounts were received.

It is true that *Merrill* has been followed both by the majority of the Tax Court below and by the Tax Court in Gaddy v. Commissioner, 38 T.C. 943 (1962). The Fifth Circuit, in Gaddy v. Commissioner, 344 F.2d 460, 462 (1965), while quoting in part the Tax Court's treatment of the *Merrill* question, is not really authoritative support of *Merrill* because this portion of the Tax Court's decision was not appealed by the Commissioner. I do not find Curran Realty Co. v. Commissioner, 15 T.C. 341 (1950), in any way persuasive from an accounting viewpoint; it seemed to reach the *Merrill* result without even mentioning the claim of right rule or any exception thereto.