GEROME J. LEONE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leone v. Commissioner
Docket No. 3472-76.
United States Tax Court
T.C. Memo 1979-69; 1979 Tax Ct. Memo LEXIS 460; 38 T.C.M. (CCH) 296; T.C.M. (RIA) 79069; February 28, 1979, Filed *460 Gerome J. Leone, pro se. L. William Fishman and Arthur H. Boelter, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax Tax Year Ending
Deficiency
Under Sec. 6653(b) [1]
April 30, 1971
$ 60,636.34
$ 30,318.17
April 30, 1972
$ 47,485.11
$ 23,742.56 The deficiencies were based on omissions from income for the taxable years 1971 and 1972 in the amounts of $ 116,610.11 and $ 102,250.00, respectively. Respondent subsequently conceded that for the taxable year 1971, $ 104,110.11 had been omitted from income, rather than $ 116,610.11. Respondent also conceded the addition to tax under section 6653(b) for both taxable years. The issue remaining for decision is whether the funds embezzled by petitioner are items of gross income to him for the tax periods ending April 30, 1971 and April 30, 1972. [2]
*461 All of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner Gerome J. Leone is an individual taxpayer who resided in Monroe, New York, at the time his petition in this case was filed. He timely filed his income tax returns on a cash basis for the fiscal years ending April 30, 1971 and April 30, 1972, hereinafter referred to as the 1971 and 1972 taxable years. Petitioner was a practicing attorney from 1949 to the taxable years in issue, and was a member of the state bar of New York. During his 1971 and 1972 taxable years he was in the independent practice of law in New York, New York. The course of events involved commenced in 1970, when petitioner was retained as an attorney by Marie Ruggiero, executrix for the estate of Andonino Ruggiero, for the purpose of probating the will of Andonino Ruggiero, deceased, and representing the executrix and the estate in all matters necessary to the closing out of the estate. From July 1970 through February 1972, while acting in this capacity, petitioner embezzled $ 206,360.11 from the estate of Andonino Ruggiero. Marie Ruggiero, executrix, was not aware of the *462 loss until October 1972, when she was told by petitioner that he had appropriated the money. Petitioner did not include any of the embezzled amounts in his gross income, for his 1971 and 1972 taxable years. Petitioner's Liability to Chemical Bank
On November 3, 1972, petitioner informed the Chemical Bank of New York, New York (hereinafter Chemical Bank) of his activities, and acknowledged the probable liability of Chemical Bank to the executrix, Marie Ruggiero, and accordingly gave Chemical Bank a confession of judgment for $ 200,000 for the sums which he had embezzled. This judgment was entered by Chemical Bank as plaintiff against petitioner as defendant in the Supreme Court of the State of New York, Orange County, on November 24, 1972. In addition to giving Chemical Bank the confession of judgment, petitioner, on November 7, 1972, assigned to Chemical Bank all rights, title, and interest in two life insurance policies, the face amount of which totaled $ 100,000. [3] One year later, on November 20, 1973, Chemical Bank received its first and only cash payment on the judgment in the amount of $ 17,486.99. This amount resulted from the sale of a house owned by petitioner *463 and Dolores E. Leone. Chemical Bank's Liability to Marie Ruggiero
On December 11, 1972, Marie Ruggiero individually and as executrix of the estate of Andonino Ruggiero, brought suit against the Chemical Bank, petitioner, and others, to recover the sums of money embezzled by petitioner. This suit was commenced in the Supreme Court of New York, New York County. Petitioner offered no defense to the suit. Twenty-seven months later, on March 18, 1975, a settlement was reached in the suit between Chemical Bank and Marie Ruggiero's estate. On April 2, 1975, Chemical *464 Bank paid the estate of Marie Ruggiero, Joseph Interollo as Executor, $ 180,000, in consideration for which Mr. Interollo signed a document releasing Chemical Bank. Petitioner's Criminal Liability
On January 19, 1973, approximately two and one-half months after petitioner acknowledged his activities, the grand jury of New York County filed an indictment against him, charging him with nineteen counts of grand larceny in the second degree, five counts of forgery in the second degree, and five counts of criminal possession of a forged instrument in the second degree. Petitioner pled guilty to grand larceny, counts first and third. On June 29, 1973, petitioner was sentenced to a term of three years in a New York state prison. He completed the sentence June 28, 1976, after having been paroled on November 1, 1974. Petitioner's Tax Liability
On the Schedule C attached to his income tax returns for the taxable years ending in 1971 and 1972, petitioner showed gross receipts and net profits as follows: TYE
Gross Receipts
Net Profits
1971
$ 32,713.50
$ 17,976
1972
$ 21,898.00
$ 9,614
On February 5, 1976, the Commissioner of Internal Revenue *465 issued a statutory notice of deficiency to petitioner, asserting deficiencies of $ 60,636.34 for 1971 and $ 47,485.11 for 1972. These deficiencies were based upon the omission from income of the sums embezzled by petitioner in his 1971 and 1972 taxable years. We must decide whether the funds embezzled by petitioner are gross income to him for his 1971 and 1972 taxable years. Petitioner contends that notwithstanding James v. United States,366 U.S. 213 (1961), which established the rule that embezzled funds are taxable as gross income, his activities should not be viewed as having produced gross income to him in his 1971 and 1972 taxable years. Petitioner argues that the principle of James is not applicable in this case because there was a "consensual recognition of an obligation to repay" the funds in the form of his confession of judgment to Chemical Bank and assignment of his life insurance policies to the bank. Respondent disagrees, and argues that petitioner's case falls squarely within the bounds of James v. United States,supra. Respondent *466 contends that there was no "consensual recognition" between Chemical Bank and petitioner, and alternatively, that even if there was a "consensual recognition," it did not occur before the close of petitioner's 1971 and 1972 taxable years. Respondent also contends that there must be substance to any "consensual recognition," and that a promise to repay made before the close of the taxable year must be realistic. Despite petitioner's contentions that his situation can be distinguished from James v. United States,supra, we fail to see any significant distinctions. We find that there was no "consensual recognition of an obligation to repay" before the end of petitioner's 1971 and 1972 taxable years, and accordingly, the embezzled funds are gross income to petitioner in the respective taxable years in which they were taken. In James v. United States,supra at 219, the Supreme Court provided the criteria upon which the taxation of embezzled funds has since been based: When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual *467 recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." In such case, the taxpayer has "actual command over the property taxed--the actual benefit for which the tax is paid." This standard brings wrongful appropriations within the broad sweep of "gross income"; it excludes loans. * * * [Citations omitted.] Petitioner contends that when he signed the confession of judgment to Chemical Bank, "there was a 'substitution of parties' whereby Chemical Bank became the creditor in anticipation of making restitution to the victim." This "substitution of parties," petitioner maintains, gave legal effect to his intent to make restitution, and constituted the consensual recognition required by James.
Petitioner relies on Buff v. Commissioner,496 F. 2d 847 (2d Cir. 1974), revg. 58 T.C. 224 (1972). Although Buff did involve embezzled funds, it is not helpful to petitioner's case, for the consensual *468 recognition we found in that case was based on a confession of judgment executed in the same taxable year the embezzlement occurred. [4]
*469 Petitioner's 1971 and 1972 taxable years had closed (on April 30, 1971 and April 30, 1972) long before he executed a confession of judgment in November of 1972. Any consensual recognition represented by his confession of judgment does not "relate back" to a time previous to the close of those taxable years, when petitioner realized an accretion to wealth. [5] In addition, even if any consensual recognition related back to pre-April 30, 1972, a second consideration, which was the basis of the Second Circuit's decision in Buff v. Commissioner,supra, is whether there was more than an illusory promise that the money would actually be repaid at fixed intervals. Though petitioner made a relatively small payment to Chemical Bank from the proceeds of the sale of his house, and ultimately assigned to Chemical Bank several life insurance policies, petitioner has not made any other repayments. *470 Petitioner nevertheless asserts that he did not intend to permanently deprive the executrix, Marie Ruggiero, or the estate, of the money. The short answer to this is that petitioner exerted sufficient control over the funds so that, as a practical matter, he derived readily realizable economic value. [6] The facts before us do not require an attempt to carefully delineate the boundaries of "consensual recognition." It suffices to observe that a subsequently formed general intent to make restitution at some unspecified future date is alone insufficient. Cf.Mais v. Commissioner,51 T.C. 494, 498 (1968); Gilbert v. Commissioner,552 F. 2d 478 (2d Cir. 1977), revg. a Memorandum Opinion of this Court. *471 Finally, petitioner contends that the Court should look at the "result" of his actions, and weigh heavily his assertion that there was "no loss" to the victim, Marie Ruggiero, the executrix. On the contrary, both the estate and the Bank suffered substantial losses. But in any event, this is beside the point. For as we stated in Fox v. Commissioner,61 T.C. 704, 714 (1974): [The] decisive consideration is the receipt of the misappropriations by the embezzler in the tax year, not the loss by the embezzler's victim. The mere fact that Western, the bonding company, reimbursed the Bank of Otterville did not relieve [the taxpayer] of the receipt of taxable income in 1967. Accordingly, we find that the funds embezzled by petitioner during his 1971 and 1972 taxable years are gross income to him in these respective years. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. At trial petitioner moved to dismiss respondent's answer as untimely under Rule 36(a), Tax Court Rules of Practice and Procedure, and for judgment in his favor. The notice of deficiency was addressed to Gerome J. Leone and Dolores E. Leone. On April 23, 1976, petitioner timely filed a petition captioned "Gerome J. Leone and Dolores E. Leone," but the petition was signed only by petitioner. On May 27, 1976, respondent filed a motion to dismiss for lack of jurisdiction as to Dolores E. Leone, and to change the caption accordingly. Respondent's motion was heard and granted on June 30, 1976. Respondent filed his answer on August 30, 1976. Respondent's answer was filed within 60 days from the date the jurisdictional motion was disposed of and was therefore timely. See Rules 36(a) and 25(c), Tax Court Rules of Practice and Procedure.↩
3. The two insurance policies are with Metropolitan Life Insurance Company. The first was issued April 9, 1964 for a face amount of $ 50,000, with a $ 124 per year premium. The second was issued March 25, 1968 for a face amount of $ 50,000, and an annual premium of $ 394.25. Both listed Dolores E. Leone as the beneficiary. Petitioner's brief, and a certified copy of the satisfaction of release attached to it, state that Chemical Bank's judgment has since been satisfied by petitioner's assignment of two additional insurance policies with a face amount of $ 100,000, and respondent's brief acknowledges this fact as well.↩
4. Buff v. Commissioner,496 F. 2d 847 (2d Cir. 1974), revg. 58 T.C. 224 (1972), involved a taxpayer who was employed as a bookkeeper, and who embezzled approximately $ 22,000 from his employer. The taxpayer, upon discovery, signed a confession of judgment during the same taxable year in which he had embezzled the funds, and agreed to pay back the amount, plus interest, at the rate of $ 25 per week. One month later his employer, dissatisfied with the arrangement, filed suit, and judgment was entered in his favor. This Court found that the taxpayer had not received income in the year he had embezzled the funds, basing its holding largely on United States v. Merril,211 F. 2d 297 (9th Cir. 1954). The Second Circuit reversed, found that the reliance on Merril,supra, was misplaced. Seven years having passed without payment on the judgment at the time of trial, the Court concluded that "the judgment was not worth the paper it was written on." 496 F.2d at 849. The Court stated that: There would be no logic in finding in this document [the confession of judgment] a significance it did not contain and to allow it to balance $ 22,000, taken in cash, would be wholly unrealistic. The Merril case itself placed weight on the bona fides of the intent to repay and the fact of actual repayment. * * * Buff v. Commissioner,supra↩ at 849.
5. Burnet v. Sanford & Brooks Co.,282 U.S. 359 (1931) provides the general rule that each taxable year must be treated as independent and separate. See Fox v. Commissioner,61 T.C. 704, 713 (1974); Mais v. Commissioner,51 T.C. 494, 499 (1968); and Muldrow v. Commissioner,38 T.C. 907, 912↩ (1962), where this principle has been applied to embezzlement cases.
6. This standard was adopted by James v. United States,366 U.S. 213 (1961) from Rutkin v. United States,343 U.S. 130, 137 (1952). Chief Justice Warren in James↩ (p. 219) stated that "A gain 'constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it.'"