MATTHEW IANNIELLO AND BEATRICE IANNIELLO, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 29249-86, 37909-86, 37910-86.     Filed February 24, 1992.

---

[1]Cases of the following petitioners are consolidated herewith: Matthew Ianniello, docket No. 37909-86; and Benjamin Cohen, docket No. 37910-86.

*Edward N. Lerner* and *Nancy M. Kostal,* for petitioners.
*Elise Frost Alair,* for respondent.

OPINION

BEGHE, *Judge:* Respondent determined deficiencies in Federal income tax and additions to tax as follows:

| Taxable year | Taxpayers[1] | Deficiency | Additions to tax sec. 6653(b) |
|---|---|---|---|
| 1981 | Benjamin & Miriam Cohen | $132,985.29 | $66,492.64 |
| 1981 | Matthew & Beatrice Ianniello | 131,878.50 | 65,939.25 |

[1]Miriam Cohen and Beatrice Ianniello each filed separate petitions, not among the cases consolidated in this proceeding, for the taxable year 1981. We filed our opinions in these cases on Aug. 22, 1991. *Ianniello v. Commissioner,* T.C. Memo. 1991-415; *Cohen v. Commissioner,* T.C. Memo. 1991-413.

| Taxable year | Petitioners | Deficiency | Additions to tax sec. 6659 |
|---|---|---|---|
| 1982 | Matthew & Beatrice Ianniello | $76,817 | $23,045.10 |

Unless otherwise noted, all section references are to the Internal Revenue Code as in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All references to petitioners are to Matthew Ianniello and Benjamin Cohen, all references to Ianniello are to Matthew Ianniello, and all references to Cohen are to Benjamin Cohen.

Following petitioners' convictions for mail fraud, Federal income tax evasion, and violations of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. secs. 1961-1968 (1988), respondent amended his answer in the case at docket No. 29249-86, asserting a $159,968 deficiency in the 1982 Federal income tax of Matthew and Beatrice Ianniello and additions to tax for fraud under section 6653(b)[2] for that taxable year. The parties in docket No. 29249-86 have stipulated that, except as controverted by petitioners' arguments in this proceeding, Ianniello's Federal income tax liabilities for the taxable year 1982 are:

| | | Additions to tax | |
| Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2)[1] | Sec. 6659 |
| $160,150[2] | $80,075 | 50% of the interest due on $83,150 | $23,045 |

[1]The Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, tit. III, subtit. C, sec. 325, 96 Stat. 324, 616, amended sec. 6653(b) to provide that after Sept. 2, 1982, in the case of fraud, respondent may, in addition to imposing an addition to tax amounting to 50 percent of the entire underpayment, impose a further addition equal to 50 percent of the interest payable on the portion of the underpayment arising from fraud.

[2]Petitioners' deficiency was increased by $182 from the amount reported in respondent's amended answer. The parties have not explained this discrepancy.

The parties in docket No. 29249-86 also have agreed to be bound by the decision in docket No. 37791-86 as to whether Beatrice Ianniello was an "innocent spouse" under section 6013(e). On August 22, 1991, we filed our opinion, *Ianniello v. Commissioner*, T.C. Memo. 1991-415, in docket No. 37791-86, holding that Beatrice Ianniello was an "innocent spouse" under section 6013(e) as to the unreported income unlawfully skimmed by Matthew Ianniello.

After concessions by the parties, the following issues remain for decision:

(1) Whether petitioners, on their Federal income tax returns for the taxable years at issue, understated their gross income under section 61 by the amount they skimmed from the receipts of P&G Funding Corp. d.b.a. the Mardi Gras (P&G Funding), and if so, whether petitioners are entitled to a

---

[2]In his amended answer, respondent conceded that liability for the additions to tax under sec. 6653(b) is limited to Matthew Ianniello.

section 165(a) loss deduction in the taxable years at issue by reason of their forfeitures to the United States of these amounts in 1989 and 1990 as a result of their 1985 RICO convictions; and

(2) whether the imposition of Federal income tax on the skimmed receipts and additions to tax for fraud under section 6653(b), coupled with the criminal forfeitures paid by petitioners to the United States, violates the Double Jeopardy Clause of the Fifth Amendment or the Excessive Fines Clause or the Cruel and Unusual Punishments Clause of the Eighth Amendment to the U.S. Constitution.

## Background

These cases were submitted fully stipulated, with facts and exhibits incorporated herein by this reference.

At the time the petitions were filed, Matthew and Beatrice Ianniello resided in Old Westbury, New York, and Benjamin Cohen resided in North Hills, New York. Matthew and Beatrice Ianniello filed a joint Federal income tax return, and reported their income on the basis of cash receipts and disbursements for each of the taxable years 1981 and 1982. Benjamin and Miriam Cohen filed a joint Federal income tax return, and reported their income on the basis of cash receipts and disbursements for the taxable year 1981.

On August 5, 1985, a Federal grand jury indicted petitioners and 12 other defendants on 67 counts, including membership in a RICO conspiracy, 18 U.S.C. sec. 1962(d); participation in a RICO enterprise, 18 U.S.C. sec. 1962(c); mail fraud, 18 U.S.C. sec. 1341; bankruptcy fraud, 18 U.S.C. sec. 152; conspiracy to defraud the United States, 18 U.S.C. sec. 371; corporate income tax evasion, sec. 7201; and personal income tax evasion, sec. 7201. The indictment alleged that petitioners were members of a RICO conspiracy and participated in a RICO enterprise by reason of having:

(1) Made false and fraudulent statements to the New York State Liquor Authority to conceal their financial and proprietary interests in several bars and restaurants located in New York City, including P&G Funding, during the years 1979 through 1982;

(2) enriched themselves unlawfully by skimming receipts from these restaurants and bars during the years 1979 through 1982;

(3) enriched themselves unlawfully by looting the receipts of the Mar-Jear Restaurant, Inc. d.b.a. G.G. Barnum's and the Peppermint Lounge in a bankruptcy fraud scheme during the years 1979 through 1982;

(4) filed false and fraudulent financial statements with the Federal Bankruptcy Court during the years 1979 through 1982; and

(5) prepared false corporate books for the purpose of filing false and fraudulent New York State sales tax returns during the years 1979 through 1982.

Pursuant to 18 U.S.C. section 1963(c), the Comprehensive Crime Control Act, Pub. L. 98-473, tit. II, secs. 302, 2301, 98 Stat. 2040, 2192 (1984), the indictment also requested forfeiture of interests maintained or acquired from the racketeering proceeds, "as of the date they were acquired, maintained, and utilized."

The U.S. District Court for the Southern District of New York, in ruling on the admissibility of evidence obtained by electronic surveillance in the criminal case, observed that "the government was engaged in investigating a large-scale criminal enterprise" in pursuing the extensive Federal investigation leading to petitioners' indictment. *United States v. Ianniello,* 621 F. Supp. 1455, 1465 (S.D.N.Y. 1985), affd. 808 F.2d 184 (2d Cir. 1986). This Federal investigation included video and audio surveillance, from September 7 to December 27, 1982, of three different rooms in petitioners' business suite at C&I Trading, a partnership registered in their names. During its surveillance operation, the Government monitored over 7,000 conversations, including a statement by coconspirator Paul Gelb that served as the Government's primary evidence of petitioners' Federal income tax evasion.

After a month-long jury trial in the U.S. District Court for the Southern District of New York, Ianniello and Cohen were convicted on December 30, 1985, of violating 43 and 52 counts, respectively, of the 67 counts for which they were indicted. Ianniello was convicted on 1 count of RICO conspiracy, 1 count of participation in a RICO enterprise, 35 counts of mail fraud, 2 counts of corporate income tax evasion for the years 1979

and 1980, and 4 counts of personal income tax evasion for the years 1979 through 1982. Cohen was convicted on 1 count of RICO conspiracy, 1 count of participation in a RICO enterprise, 32 counts of mail fraud, 1 count of bankruptcy fraud conspiracy, 11 counts of bankruptcy fraud, 2 counts of corporate income tax evasion for the years 1979 and 1980, and 4 counts of personal income tax evasion for the years 1979 through 1982.

On December 30, 1985, pursuant to the guilty verdicts on the RICO counts, the District Court ordered each petitioner to forfeit $666,667 as his share of the more than $2 million skimmed by petitioners and their coconspirator Paul Gelb from P&G Funding during the years 1979 through 1982. These orders were entered in the Judgment Book of the U.S. District Court for the Southern District of New York on February 14, 1986.

Ianniello was sentenced, on February 13, 1986, under the two RICO conspiracy and participation counts, to 6 years' imprisonment on each count (to be served concurrently), and fined $10,000 on each such count. Ianniello also was sentenced to 6 years' imprisonment on each of the 41 remaining counts (to be served concurrently with the sentences for the RICO convictions), plus 2 years' probation to be served at the expiration of his imprisonment, and a $1,000 fine on each count. Under 18 U.S.C. section 3013, Ianniello was assessed $50 for each of the 43 counts for which he was convicted, as support for the Crime Victims Assistance Fund.

On February 13, 1986, Cohen was sentenced to 5 years' imprisonment on each of the two RICO counts (to be served concurrently), and fined $10,000 on each such count. He also was sentenced to 5 years' imprisonment on each of the 50 remaining counts for which he was convicted (to be served concurrently with the sentences for the RICO convictions), plus 2 years' probation to be served at the expiration of his imprisonment, and a $1,000 fine on each such count. Under 18 U.S.C. section 3013, Cohen was assessed $50 for each of the 52 counts for which he was convicted.

In sum, Ianniello was fined a total of $61,000, assessed $2,150 under 18 U.S.C. section 3013, ordered to serve 6 years' imprisonment, placed on 2 years' probation following his release from imprisonment, and required to forfeit to the U.S. Government his $667,667 share of the skimmed receipts,

$166,667 of which he skimmed during each of the taxable years 1981 and 1982. Cohen was fined a total of $72,000,[3] assessed $2,600 under 18 U.S.C. section 3013, ordered to serve 5 years' imprisonment, placed on 2 years' probation following his release from imprisonment, and required to forfeit to the United States his $667,667 share of the skimmed receipts, $166,667 of which he skimmed during the taxable year 1981.

On December 4, 1986, the U.S. Court of Appeals for the Second Circuit affirmed petitioners' convictions, sentences, and judgments of forfeiture. *United States v. Ianniello,* 808 F.2d 184 (2d Cir. 1986). Cohen and Ianniello satisfied the judgments of forfeiture by payment to the United States in July 1989 and March 1990, respectively.

Respondent determined that petitioners failed to include the skimmed P&G Funding receipts as taxable income for the taxable years at issue, and thereby understated their Federal income tax liabilities for those years. Respondent alleges, and petitioners have stipulated, that petitioners' criminal convictions collaterally estop them from denying that they wilfully filed false and fraudulent Federal personal income tax returns for the taxable years at issue, and from denying that the deficiencies in Federal income tax arising from their failures to report the skimmed restaurant receipts are due to fraud.

Respondent is a party in privity with the United States of America, the prosecuting party in petitioners' criminal case.

## Discussion

Although respondent raised the issues for decision in docket No. 29249-86 by amendment to his answer, burden of proof is not an issue in any of these proceedings. Our decision turns on legal questions of interpretation and application of section 165(a) and the Fifth and Eighth Amendments to the U.S. Constitution.

Ianniello does not contest that $166,667 is his share of the skimmed receipts from P&G Funding for each of the taxable years 1981 and 1982, and Cohen does not contest that

---

[3]The judgment and probation/commitment order issued against Cohen, on Feb. 13, 1986, by the District Court indicates that he was fined a total of $72,000, although the breakdown of the fines ($20,000 for the two RICO convictions and an additional $1,000 for each of the 50 remaining counts, or $50,000, for which he was convicted) totaled $70,000.

$166,667 is his share of the skimmed receipts from P&G Funding for the taxable year 1981. Nor do petitioners contest their liability for the additions to tax for fraud under section 6653(b), except that they contend they are entitled to relief from these liabilities under the Fifth and Eighth Amendments.

Petitioners contend that they are entitled to deduct under section 165(a), in each of the taxable years at issue, a loss of $166,667 for the criminal forfeitures they paid in 1989 and 1990 of the like amounts they skimmed from P&G Funding receipts during the taxable years 1981 and 1982. In the alternative, petitioners contend that imposing a Federal income tax on the skimmed receipts and the additions to tax for fraud, when coupled with the criminal forfeitures, violates the Double Jeopardy Clause of the Fifth Amendment and the Cruel and Unusual Punishments or Excessive Fines Clauses of the Eighth Amendment. We disagree and hold otherwise.

*Section 61*

Although petitioners, on brief, question whether the receipts they skimmed from P&G Funding are gross income within the meaning of section 61, they make no arguments in support of this position. Nevertheless, as a preliminary matter, we will briefly address whether gross income under section 61 includes cash unlawfully acquired by a taxpayer when a forfeiture provision of Federal law vests legal title to the cash in the United States and not the taxpayer.

In 1989 and 1990, petitioners, as a result of their RICO convictions, forfeited an amount equal to the P&G Funding receipts they skimmed, including the amounts skimmed in each of the taxable years at issue. The criminal indictment charging petitioners and their 12 codefendants with 67 criminal violations asserted that any interests acquired or maintained from the activities of the racketeering enterprise were "subject to forfeiture as of the date they were acquired, maintained, and utilized." Stated as such, the indictment conformed with the RICO forfeiture provision, 18 U.S.C. section 1963(c), as amended in 1984, which states in pertinent part:

All right, title, and interest in property * * * vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than defendant may be subject of a special verdict of forfeiture and thereafter

shall be ordered forfeited to the United States, unless the transferee establishes * * * that he is a bona fide purchaser for value * * *.[4]

Section 61 provides that "gross income means all income from whatever source derived." The U.S. Supreme Court has held that gross income includes all "accessions to wealth, clearly realized and over which the taxpayers have complete dominion." *James v. United States,* 366 U.S. 213, 219 (1961) (quoting *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 431 (1955)). A taxpayer has dominion and control over cash when he has the freedom to use it at will, even though that freedom may be assailable by persons with better title. *Rutkin v. United States,* 343 U.S. 130, 137 (1952). Thus, a taxpayer who unlawfully acquires cash has possession and receives gross income in the taxable year that he unlawfully acquires the cash, even though he makes restitution in a later year. *James v. United States, supra* at 219-220.

A taxpayer obtains possession, custody, and control of proceeds he acquires unlawfully, despite a statutory forfeiture provision that vests legal title to the proceeds in the United States, on the date he acquires such proceeds. *Wood v. United States,* 863 F.2d 417, 419 (5th Cir. 1989); *Gambina v. Commissioner,* 91 T.C. 826 (1988). In *Wood v. United States, supra* at 419, the U.S. Court of Appeals for the Fifth Circuit observed:

Nor should the test for taxable income turn * * * on whether a taxpayer had to forfeit the proceeds to the federal government rather than make restitution to other victims. * * * The legal test for * * * [gross] income is dominion and control, and that test in its terms excludes consideration of what happens to income after it flows from the taxpayer's hands.

Similarly, we have held that cash acquired by a taxpayer in violation of RICO is gross income to the taxpayer, despite the relation-back provision of 18 U.S.C. section 1963(c). *Gambina v. Commissioner, supra* at 828-829.

---

[4]The U.S. District Court for the Southern District of New York rejected petitioners' assertion that the relation-back provision of 18 U.S.C. sec. 1963(c), as applied to them, violated the constitutional prohibition of ex post facto laws, and held that the receipts of P&G Funding skimmed by petitioners were subject to this provision. *United States v. Ianniello,* 621 F. Supp. 1455, 1477 (S.D.N.Y. 1985), affd. 808 F.2d 184 (2d Cir. 1986). The District Court noted that Congress, in amending 18 U.S.C. sec. 1963(c) to include this relation-back provision, closed a potential loophole in the RICO forfeiture provision that might have allowed a party with assets subject to forfeiture under RICO to defeat the forfeiture by transferring the forfeitable assets to a third party. *United States v. Ianniello, supra* at 1476.

Petitioners acquired and exercised dominion and control over the amounts they skimmed from the receipts of P&G Funding in the taxable years at issue. At the times of acquisition during these years, petitioners had the freedom to use the skimmed receipts at will and thus were in possession, custody, and control of the unreported income. See *Wood v. United States, supra* at 419; *Gambina v. Commissioner, supra* at 828. We therefore find that the receipts petitioners skimmed in the taxable years at issue constitute gross income under section 61.

*Section 165 Deduction*

Petitioners contend that they are entitled to deduct $166,667 from gross income in each of the taxable years at issue as a loss under section 165(a) because they forfeited the skimmed receipts to the United States. Petitioners argue that they sustained a loss in the taxable years at issue because, under the relation-back provision of 18 U.S.C. section 1963(c), petitioners are considered to have relinquished possession and control of the skimmed receipts to the United States in the year they acquired these receipts.

Respondent argues that petitioners did not in fact sustain a loss in the taxable years at issue because petitioners did not forfeit the proceeds from their racketeering activities until 1989 and 1990, and that the year of repayment, for tax purposes, is not affected by the relation-back provision of 18 U.S.C. section 1963(c).

Under section 165(a), a loss to be deductible in a taxable year must have been sustained in fact during that taxable year. Sec. 165(a); *Boehm v. Commissioner,* 326 U.S. 287, 292 (1945); *Halliburton Co. v. Commissioner,* 93 T.C. 758, 770 (1989); sec. 1.165-1(d), Income Tax Regs. A taxpayer generally is entitled to deduct from his income, in the year of repayment, any amount acquired as income and subsequently repaid. *James v. United States, supra* at 219-220; *Buff v. Commissioner,* 496 F.2d 847, 849 (2d Cir. 1974) (Oakes, J., concurring); *Mais v. Commissioner,* 51 T.C. 494, 499 (1968).

This Court has held that the only Federal income tax relief available to a taxpayer who has unlawfully acquired income is a deduction from gross income in the year of actual repayment. *Mais v. Commissioner, supra* at 499. We also have held that

the relation-back clause of a statutory forfeiture provision does not accelerate the taxable year of "repayment" by a taxpayer who has unlawfully acquired income subject to forfeiture. *Bailey v. Commissioner,* T.C. Memo. 1989-674, affd. without published opinion 929 F.2d 700 (6th Cir. 1991). Accordingly, a statutory forfeiture provision that includes a relation-back clause does not entitle such a taxpayer to a deduction from gross income prior to the year the forfeiture actually occurs. *Bailey v. Commissioner, supra.*[5]

Although our decision in *Bailey v. Commissioner, supra,* concerns Federal income tax liability arising from narcotics violations and the relation-back provision of 21 U.S.C. section 881(h), it applies equally to the RICO relation-back provision. The relation-back provisions of 18 U.S.C. section 1963(c) and 21 U.S.C. section 881(h) are virtually identical,[6] and the legislative history indicates that Congress amended the two acts to include a relation-back provision for the same reason, to prevent sham transfers of forfeitable assets to third parties. S. Rept. 98-225, at 215 (1983).

Petitioners did not forfeit the skimmed receipts by the end of the taxable years at issue. Prior to their convictions, petitioners did not recognize the interest of the United States in the skimmed receipts. The United States was not entitled to seize these receipts until petitioners were convicted of RICO violations, and the jury had determined the interests petitioners acquired or maintained through their racketeering activities. Petitioners were convicted of RICO violations in the U.S. District Court for the Southern District of New York in December 1985, and the U.S. Court of Appeals for the Second Circuit affirmed these convictions in December 1986.

---

[5]Our decision in *Bailey v. Commissioner, supra,* is consistent with the well-settled rule that, under the annual accounting concept, events subsequent to the taxable year do not affect Federal income tax liability for that year. See *Buff v. Commissioner,* 496 F.2d 847, 849 (2d Cir. 1974) (Oakes, J., concurring); *Noble v. Commissioner,* 368 F.2d 439, 444 (9th Cir. 1966), affg. T.C. Memo. 1965-84. This Court has consistently held that a taxpayer's Federal income tax liability is not changed by a judgment entered nunc pro tunc, i.e., a judgment purporting to be retroactive for all legal purposes. *Gordon v. Commissioner,* 70 T.C. 525, 530 (1978); *Keleher v. Commissioner,* 25 T.C. 1154, 1159 (1956); *Daine v. Commissioner,* 9 T.C. 47, 51 (1947), affd. 168 F.2d 449, 451 (2d Cir. 1948).

[6]21 U.S.C. sec. 881(h) (Supp. 1991) provides: "All right, title and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section."

Petitioners did not satisfy the forfeiture orders until July 1989 and March 1990, respectively. They cannot accelerate the year of "repayment" for Federal income tax purposes. Petitioners did not "repay" the unreported income in the taxable years at issue, and they are therefore not entitled to a loss deduction under section 165(a) for these years.

*Fifth Amendment Claims*

Petitioners argue that it would violate their rights under the Double Jeopardy Clause of the Fifth Amendment to hold them liable for Federal income tax on the skimmed receipts and additions to tax for fraud under section 6653(b) when they have already forfeited the skimmed receipts.

Petitioners contend that this proceeding is a second prosecution for the same offense of which they were convicted in the earlier criminal case, their failure to report as gross income the receipts of P&G Funding they skimmed in each of the taxable years at issue.

Petitioners also contend that respondent's determinations of deficiencies in Federal income tax and additions to tax for fraud under section 6653(b) amount to a second punishment for the same offense for which petitioners were fined and sentenced to prison in the earlier criminal case. They claim that respondent's determinations cannot serve the remedial goal of reimbursement because petitioners, by reason of the forfeitures, already have reimbursed the United States for their underpayment of Federal income tax for each of the taxable years at issue.

Petitioners further contend that the additions to tax for fraud are disproportionately greater than the damage caused by their underpayment of Federal income tax for the taxable years at issue. Petitioners argue that respondent incurred no ancillary expenses in investigating their fraud because their fraud was established by their conviction in the earlier criminal case.

In *United States v. Halper,* 490 U.S. 435, 440 (1989), the Supreme Court stated:

the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. [Citation omitted.]

However, *Helvering v. Mitchell,* 303 U.S. 391 (1938), the primordial case involving tax crimes and the Double Jeopardy Clause, makes clear that "punishment" is the ultimate focus of the Double Jeopardy Clause, regardless of which abuse is at issue. In *Helvering v. Mitchell, supra* at 399, the Supreme Court held that Congress could impose both a criminal and civil sanction for the same act or omission because "the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." The Double Jeopardy Clause does not bar "a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based". *Id.* at 397.

The taxpayer in *Helvering v. Mitchell, supra,* challenged a civil tax proceeding on the ground that it was a second prosecution for the same offense after acquittal. Prior to the civil tax proceeding, the taxpayer had been indicted and acquitted on charges of personal income tax evasion arising from the same transactions. *Id.* at 396. The taxpayer argued that the civil tax proceeding arising from his alleged Federal income tax deficiency was barred under the Double Jeopardy Clause of the Fifth Amendment as a second proceeding for punishment because the addition to tax for fraud was intended as punishment for allegedly fraudulent acts, and therefore equivalent to a criminal penalty. *Id.* at 398. The Supreme Court disagreed, holding that the addition to tax for fraud is imposed "primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Id.* at 401. The Court concluded that the addition to tax for fraud and the civil tax proceeding did not have the intention or effect of punishing the taxpayer, and therefore were properly characterized as remedial. *Id.* at 401-402.

Against the background of *Helvering v. Mitchell, supra,* we address in turn petitioners' arguments that they are being subjected to the twin abuses of second prosecution and multiple punishments under the Double Jeopardy Clause.

### 1. *Second Prosecution*

The test used to determine whether a proceeding is a second prosecution for the same offense was recently enunciated by

the Supreme Court in *Grady v. Corbin,* 495 U.S. 508 (1990). Two proceedings pertain to the same offense where prosecution under the statutory provisions violated does not require proof of additional facts. *Grady v. Corbin, supra* at 510 (citing *Blockburger v. United States,* 284 U.S. 299, 304 (1932)). A proceeding is also a second prosecution for the same offense where the prosecutor, in order to establish essential elements of a second crime, proves conduct of which the defendant already has been convicted. *Id.* at 521.

The test of *Grady v. Corbin, supra,* is no help to petitioners here. The test applies only to second prosecutions, and this proceeding is not a second prosecution within the meaning of the Double Jeopardy Clause because it is not a second attempt to punish petitioners. See *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 550 (1943); *Helvering v. Mitchell, supra.*

In *United States ex rel. Marcus v. Hess, supra* at 550, a case concerning what the criminal defendant asserted was a second prosecution for the same offense after conviction, the Supreme Court held that the Government—

has the same interest in protecting itself from fraudulent practices as it has in protecting any citizen from frauds which may be practiced upon him. The powers of the United States as a sovereign, dealing with offenders against their laws, must not be confounded with their rights as a body politic. It would present a strange anomaly, indeed, if, having the power to make contracts and hold property as other persons, natural or artificial, they were not entitled to the same remedies for their protection. [Citation omitted.]

The defendants in *United States ex rel. Marcus v. Hess, supra,* contended that the Double Jeopardy Clause barred an action for double damages and civil forfeiture because it arose from the same acts for which they had previously been convicted and punished, and that it was intended to be punitive rather than remedial because their liability for double damages and civil forfeiture exceeded the actual damages. *Id.* at 548-551. The Court disagreed, holding that, inasmuch as the double damages and civil forfeiture were intended to ensure that the Government was completely compensated for damages caused by the defendants' fraud, and not intended to vindicate public justice, the purpose of the action was remedial. *Id.* at 551-552.

We disagree with petitioners' contention that respondent's determination of Federal income tax deficiencies is a second attempt to punish petitioners. The Supreme Court recently

stated in *United States v. Halper, supra* at 448 (citation omitted), "punishment serves the twin aims of retribution and deterrence."

The Commissioner, by determining liability for a Federal income tax deficiency, seeks to recover revenue lost due to the taxpayer's underpayment of Federal income tax. *Traficant v. Commissioner*, 884 F.2d 258, 263 (6th Cir. 1989). A taxpayer sentenced to imprisonment and fined after conviction in a criminal tax matter is punished for the commission of a crime, and is not thereby relieved of his obligation to pay taxes due. *Mason v. Commissioner*, T.C. Memo. 1984-1.

Petitioners contend that the criminal forfeitures they paid in 1989 and 1990 were reimbursement to the United States for revenue lost due to their underpayment of Federal income taxes for the taxable years at issue and not punishment for the commission of a crime. We do not agree; the criminal forfeiture provision of 18 U.S.C. section 1963(c) is a means adopted by Congress to eliminate organized crime from legitimate organizations in interstate commerce. S. Rept. 91-617, at 78 (1969).

In a contemporaneous discussion of the RICO criminal forfeiture provision, Senator McClellan, coauthor of RICO, observed that "Criminal forfeiture under [RICO] serves not only to punish, deter, incapacitate, and so on—it serves directly to remove the corrupting influence from the channels of commerce." 116 Cong. Rec. 18955 (1970). The Supreme Court also emphasized the deterrent effect of forfeiture, in discussing what constitutes "interest in an enterprise" under RICO. *Russello v. United States*, 464 U.S. 16, 28 (1983). In enacting the criminal forfeiture provision of 18 U.S.C. section 1963(c), Congress intended to serve the punitive goals of retribution and deterrence, and not the remedial goal of reimbursement.

Petitioners derive their argument that their payment of the criminal forfeitures reimbursed the United States for their underpayment of Federal income taxes, and thereby served the remedial goal of restitution, from a Department of Justice comment on the Organized Crime Control Act of 1969, stating in pertinent part:

According to Blackstone, the only valid reason for [criminal] forfeiture is that since all property is derived from society, any member of society who violates the fundamental contract of his association by transgressing society's

laws forfeits his right to that property, and the state may justly resume that portion of the property which the laws have previously assigned him. [S. Rept. 91-617, at 80 (1969) (quoting Dept. of Justice statement on the Organized Crime Control Act of 1969). Citation omitted.]

Contrary to petitioners' argument, the Department of Justice comment shows that criminal forfeiture "resumes" to society those gains petitioners have illegally acquired, and not the Federal income tax owing on such gains. Accordingly, we hold that petitioners have not reimbursed the Government for their underpayment of Federal income tax for the taxable years at issue, and that imposing liability on petitioners for the Federal income tax deficiencies has the remedial intent and effect of reimbursing the United States for that underpayment. Cf. *Traficant v. Commissioner, supra* at 263; *Mason v. Commissioner, supra.*

We also disagree with petitioners' contention that respondent's determination of additions to tax for fraud under section 6653(b) is a second attempt to punish petitioners. In *United States v. Halper,* 490 U.S. at 449, the Supreme Court held that sanctions are punitive where the sanctions "may not fairly be characterized as remedial, but *only* as a deterrent or retribution." (Emphasis added.) Generally, additions to tax for fraud are remedial because they safeguard the revenue and reimburse the Government for ancillary costs in investigating the taxpayer's fraud. *Helvering v. Mitchell, supra* at 401; *Kenney v. Commissioner,* 111 F.2d 374, 375-376 (5th Cir. 1940); *Rowlee v. Commissioner,* 80 T.C. 1111, 1123 (1983).[7]

Petitioners incorrectly assert that their liability for additions to tax for fraud is punitive because the Government incurred no costs in proving their fraud. Although petitioners have stipulated that they are collaterally estopped from disputing fraud in this proceeding, the Government incurred ancillary costs. These ancillary costs include respondent's costs in proceeding against petitioners to recover the revenue lost from the underpayment of Federal income tax, *Barnette v. Commis-*

---

[7] There is dictum suggesting that additions to tax for fraud under sec. 6653(b) also serve to deter taxpayers from defrauding the Government. *Scallen v. Commissioner,* 877 F.2d 1364, 1372 (8th Cir. 1989); *Asphalt Industries v. Commissioner,* 384 F.2d 229, 234-235 (3d Cir. 1967). However, this Court has never adopted this characterization of additions to tax for fraud under sec. 6653(b).

*sioner,* 95 T.C. 341, 347 (1990); *Lockman v. Commissioner,* T.C. Memo. 1989-585, and also the costs incurred by the United States in detecting, investigating, and prosecuting petitioners' fraud in the earlier criminal case. See *United States v. Fliegler,* 756 F. Supp. 688, 697 (E.D.N.Y. 1990).

In *United States v. Fliegler, supra* at 697, the U.S. District Court for the Eastern District of New York, in an action brought under the civil provisions of the False Claims Act, imposed remedial sanctions against the defendants for the costs incurred by the Government in both the civil proceeding and the related prior criminal case. At trial, the Government presented evidence of the ancillary costs it incurred "in prosecuting both the criminal and civil actions against the defendants." *Id.* The District Court did not distinguish between the costs incurred in the different proceedings, and held, instead, that the Government was entitled to the civil sanctions because the sanctions bore a rational relationship to the costs incurred by the United States in both the civil and criminal proceedings. *Id.*

In *Helvering v. Mitchell,* 303 U.S. 391, 401 (1938), the Supreme Court held that the Commissioner was entitled to impose additions to tax for fraud against the taxpayer because the additions to tax reimbursed the Government for costs incurred in investigating the taxpayer's fraud. The Court did not limit its holding to the ancillary costs incurred by the respondent in the civil tax proceeding, but rather identified the ancillary costs as those incurred by the Government in investigating the taxpayer's fraud. *Id.* We interpret the Supreme Court's statement as permitting respondent to recover all amounts expended by agencies of the United States, and not only those expended by respondent. We therefore follow *United States v. Fliegler, supra,* and apply *Helvering v. Mitchell, supra,* to take into account the ancillary costs incurred by the United States in petitioners' earlier criminal case.

Although the record provides no direct evidence of the costs incurred by the United States as a result of petitioners' fraud, these costs were obviously substantial. The U.S. District Court for the Southern District of New York characterized petitioners' operation as "a large-scale criminal enterprise". *United States v. Ianniello,* 621 F. Supp. at 1465. The extensive

Federal investigation into petitioners' fraud included the Government's interception of over 7,000 conversations during 4 months of electronic surveillance of petitioners' suite of offices at C&I Trading. *Id.* at 1470. The United States also incurred expenses in the criminal prosecution of petitioners, which required a 1-month jury trial and an appeal that was not decided until a year after the trial concluded, and in this proceeding. On this record, we conclude that petitioners' liability for additions to tax for fraud serves the remedial goal of reimbursing the United States for costs incurred in detecting, investigating, and prosecuting petitioners' fraud.

We reject petitioners' contention that the additions to tax for fraud are penal to the extent that the Government has not asserted and proved the specific costs it incurred in detecting, investigating, and prosecuting their fraud. The Supreme Court has recognized that damages and costs incurred by the Government may, at times, be difficult if not impossible to ascertain, *United States v. Halper, supra* at 449; *Rex Trailer v. United States,* 350 U.S. 148, 153 (1956), and that, where injury is obvious and the civil sanctions imposed are reasonable, the United States is not required to show specific damages to be entitled to receive reimbursement. *Rex Trailer v. United States, supra* at 152-153.

In *Rex Trailer v. United States, supra,* the Supreme Court considered whether the Double Jeopardy Clause barred a civil action by the United States for liquidated damages under section 26(b)(1) of the Surplus Property Act of 1944 against a party who had been fined in an earlier criminal proceeding after pleading nolo contendere to a five-count indictment. The defendant contended that the two proceedings arose from the same act, and that the liquidated damages sought in the second proceeding were punitive because the Government failed to allege specific damages. *Id.* at 152. The Supreme Court disagreed, concluding that its decision in *United States ex rel. Marcus v. Hess,* 317 U.S. 537 (1943), recognized that there is no statutory or judicial requirement that the Government show specific damages. *Rex Trailer v. United States, supra* at 152. The Court went on to state that it was obvious the Government had suffered injury, and that "it cannot be said that the measure of recovery fixed by Congress in the Act is so unreasonable or excessive that it transformed what was

clearly intended as a civil remedy into a criminal penalty." *Id.* at 153-154.

As previously stated, the costs incurred by the Government in detecting, investigating, and prosecuting petitioners' fraud were obviously substantial. There is no statutory requirement under section 6653(b) that the United States show specific costs prior to imposing additions to tax for fraud. Petitioners have not cited any cases, nor do we know of any cases, where the Government has been required to show specific costs prior to imposing additions to tax for fraud. We therefore find that the additions to tax for fraud are primarily remedial, even though the Government did not allege and prove specific costs.

We also reject petitioners' claim that the criminal forfeitures preclude respondent from recovering additions to tax for fraud. A taxpayer's liability for additions to tax for fraud is primarily remedial, even though the taxpayer has been fined and imprisoned after conviction for personal income tax evasion. *Kenney v. Commissioner,* 111 F.2d 374, 375-376 (5th Cir. 1940); *Mason v. Commissioner,* T.C. Memo. 1984-1. The fine and term of imprisonment imposed on the taxpayer after conviction for personal income tax evasion is punishment for the commission of a crime, and not reimbursement for costs incurred by the United States in investigating the taxpayer's fraud. *Mason v. Commissioner, supra.* As we have already noted, criminal forfeiture under RICO is punishment for the commission of a crime. 116 Cong. Rec. 18955 (1970). Subjecting petitioners to additions to tax for fraud is remedial, even though it follows their forfeitures under RICO of unlawfully received proceeds. Cf. *Kenney v. Commissioner, supra* at 375-376; *Mason v. Commissioner, supra.*

### 2. *Multiple Punishments*

In *United States v. Halper,* 490 U.S. 435 (1989), the Supreme Court focused on the Double Jeopardy Clause as it pertains to multiple punishments for the same offense. The Court held that where the defendant has previously suffered criminal punishment, the Double Jeopardy Clause bars an overwhelmingly disproportionate civil sanction that served the punitive aims of retribution and deterrence, and did not bear any rational relationship to compensating the Government for its loss. *Id.* at 448. The Court limited application of this rule

to the rare case before it, in which a prolific but small-gauge offender was subjected to a statutorily fixed penalty that provided for sanctions that were overwhelmingly disproportionate to the damages he caused. *Id.* at 449. The Court also recognized that, where the Government has been harmed, it is entitled to rough remedial justice, including ancillary costs. *Id.* According to the Court, "the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment" only when the sanction is overwhelmingly disproportionate to the damage caused. *Id.* at 449-450.

In *United States v. Halper, supra,* the Government brought a civil action under the civil False Claims Act, 31 U.S.C. sections 3729-3731, against a defendant who previously had been convicted under the Federal False Claims Act, 18 U.S.C. section 287, and sentenced to 2 years' imprisonment and a fine of $5,000 for submitting 65 false claims for Medicare benefits. Under the civil False Claims Act, the defendant had a potential civil liability to the United States of $2,000 per claim, $130,000 in total. *Id.* at 438. The actual damages incurred by the United States as a result of the defendant's conduct amounted to $585, plus investigatory and prosecutorial costs. *Id.* at 438. The Supreme Court held that the civil action was punitive because it did much more than compensate the Government for its loss. *Id.* at 452. The Court held that the sanction imposed by the fixed-penalty provision was barred by the Double Jeopardy Clause, and that the defendant was entitled to an accounting of actual damages incurred by the United States. *Id.* at 449, 452.

The case before us is distinguishable from *United States v. Halper, supra.* Petitioners' Federal income tax deficiencies and additions to tax for fraud are remedial, and the deficiencies and additions to tax are not overwhelmingly disproportionate to the actual damage caused by petitioners' underpayment of Federal income tax for the taxable years at issue. As previously noted, the United States, in addition to petitioners' underpayment of Federal income tax, incurred substantial costs in detecting, investigating, and prosecuting petitioners' fraud. We therefore find that the Federal income tax deficiencies and additions to tax for fraud under section 6653(b) bear a rational relationship to compensating the Government for its loss due

to petitioners' underpayment of Federal income tax for the taxable years at issue.

There is another reason why petitioners are not entitled to rely on the rule of *United States v. Halper, supra.* Their liability for the Federal income tax deficiencies and additions to tax for fraud under section 6653(b) does not arise from a fixed-penalty provision. Under section 6211, petitioners' Federal income tax deficiencies for the taxable years at issue relate directly to petitioners' underpayment of Federal income tax. The additions to tax for fraud are a stated percentage of the dollar amount of the tax deficiencies, and are therefore tailored to the severity of the violation. Sec. 6653(b). Thus, unlike *United States v. Halper, supra,* the additions imposed against petitioners are rationally related to the governmental costs incurred by reason of their fraudulent underpayments of tax.

*Eighth Amendment Claims*

Petitioners also argue that it would violate their rights under the Eighth Amendment to the U.S. Constitution if they are held liable for Federal income tax deficiencies on the skimmed receipts and additions to tax for fraud. They contend that imposing liability on them for the Federal income tax deficiencies and additions to tax for fraud, when coupled with the criminal sanctions imposed against them, is so draconian as to amount to excessive fine and/or cruel and unusual punishment.

This Court, in cases of Eighth Amendment claims, has held that Eighth Amendment protection is only afforded in criminal proceedings, and to those convicted of crimes. *Acker v. Commissioner,* 26 T.C. 107, 114-115 (1956), revd. in part on other grounds 258 F.2d 568 (6th. Cir. 1958), affd. 361 U.S. 87 (1959); *Bailey v. Commissioner,* T.C. Memo. 1989-674, affd. without published opinion 929 F.2d 700 (6th Cir. 1991). However, the Supreme Court, in a recent case, left open the possibility that Eighth Amendment protection might extend to some civil proceedings, *Browning-Ferris Industries v. Kelco Disposal,* 492 U.S. 257 (1989), and we therefore consider that possibility in the circumstances of this case.

In *Browning-Ferris Industries v. Kelco Disposal, supra,* private parties filed suit in a U.S. District Court, charging

Browning-Ferris Industries with antitrust violations and violations of Vermont tort law. A civil jury awarded plaintiffs $6 million in punitive and exemplary damages. *Id.* at 259. On appeal, the Supreme Court considered whether a civil jury award of $6 million to a private citizen for punitive and exemplary damages was excessive within the meaning of the Eighth Amendment. *Id.* at 259. The Court held that the Excessive Fines Clause of the Eighth Amendment does not apply in cases between private parties, but left open whether the Excessive Fines Clause might apply to civil proceedings where the Government expects to share in the award. *Id.* at 260, 276 n.22.

Whatever the reach of Eighth Amendment protection after *Browning-Ferris Industries v. Kelco Disposal, supra,* it does not extend to petitioners' cases. This Court has recognized the draconian nature of subjecting illegal income to both forfeiture and income tax. *Schad v. Commissioner,* 87 T.C. 609, 623 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987); *Vasta v. Commissioner,* T.C. Memo. 1989-531. However, we concluded that this is a result of the taxpayer's illegal activities, and that relief "must come from Congress, which has enacted legislation pointing in the opposite direction." *Vasta v. Commissioner, supra.*

We also have held that, for Eighth Amendment purposes, a taxpayer cannot couple his liability for a Federal income tax deficiency and additions to tax for fraud with the forfeiture he paid to the United States for the commission of a crime where the two sanctions are imposed for different crimes. *Bailey v. Commissioner, supra.* That two matters have facts in common does not preclude them from being discrete and separable for purposes of the Eighth Amendment. *Id.*

Petitioners' liability for the Federal income tax deficiencies and additions to tax for fraud arose from matters different from the criminal forfeitures. The criminal forfeitures arose from petitioners' membership in a RICO conspiracy and their participation in a RICO enterprise. 18 U.S.C. sec. 1963(c). In contrast, petitioners' liability for the Federal income tax deficiencies and additions to tax for fraud arose from their obligation to pay Federal income tax on their illegal income. *Traficant v. Commissioner,* 884 F.2d 258, 263 (6th Cir. 1989); *Bailey v. Commissioner, supra.* Although, as a result of this

obligation, petitioners had the duty to pay Federal income tax on the income they acquired through their RICO violations, their failure to satisfy this obligation arose from their decision not to disclose all taxable income on their Federal income tax returns, and not from their RICO violations. See *Bailey v. Commissioner, supra.* We therefore hold, for the purpose of entitlement to Eighth Amendment protection, that petitioners cannot couple the forfeitures paid by them with their liability for the Federal income tax deficiencies and additions to tax for fraud.

We already have held that petitioners' liability for the Federal income tax deficiencies and additions to tax for fraud compensates the United States for lost revenues and costs incurred in investigating petitioners' fraud. Accordingly, the Eighth Amendment does not apply to petitioners' liability for the Federal income tax deficiencies and the additions to tax for fraud imposed against petitioners under section 6653(b).

To reflect the foregoing, and because of concessions by the parties,

*Decisions will be entered under Rule 155.*