LARRY D. BARNETTE AND KATHLEEN C. BARNETTE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ALLIED MANAGEMENT CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 16906-82, 22809-82, 535-85, 620-85.     Filed September 24, 1990.

*John Harllee,* for the petitioners.
*Bobby D. Burns,* for the respondent.

OPINION

KÖRNER, *Judge:* The instant cases are four of a larger group of related cases presently pending in this Court.[1] As the result of an apparently lengthy criminal investigation and prosecution principally involving nontax matters, the Government in 1984 obtained convictions on various counts against the present petitioners, other than Kathleen Barnette. Petitioner Allied Management Corp. was not indicted on any count of fraudulently evading its taxes, but was convicted on other matters; petitioner Larry D. Barnette was acquitted for 1977 tax fraud, but convicted of violations of section 7201[2] (relating to an attempt to evade or defeat any tax or the payment thereof, a felony) for the years 1978 and 1979, as well as for other crimes in other years. Sentences pursuant to these convictions were imposed, which involved a prison term for petitioner Larry D. Barnette, as well as an award of $7 million in favor of the Government, apparently with respect to all the convictions.

Subsequently, the Internal Revenue Service issued statutory notices of deficiency against all the members of the present group. At least with respect to the petitioners presently before us, such statutory notices, in addition to deficiencies, determined additions to tax for civil fraud under the provisions of section 6653(b) with respect to petitioner Larry D. Barnette for the years 1977 through

---

[1]Larry D. Barnette and Kathleen C. Barnette, docket No. 16906-82; Allied Management Corp., docket No. 22809-82; Larry D. Barnette and Kathleen C. Barnette, docket No. 535-85; Allied Management Corp., docket No. 620-85; Allied Management Corp., docket No. 29224-85; Larry D. Barnette and Kathleen C. Barnette, docket No. 355-88; Larry D. Barnette, docket No. 3282-88; Larry D. Barnette, docket No. 3283-88; Allied Management Corp., docket No. 3285-88; Janet L. Barnette, docket No. 11681-88; Leo David Barnette, docket No. 11682-88; and Kathleen C. Barnette, docket No. 17821-88.

[2]All statutory references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

1980, and against petitioner Allied Management Corp., for its taxable years ending May 31, 1975, and 1978 through 1981. The cases of these petitioners, together with other members of the group not here involved, are presently awaiting trial.

In that connection, first by informal inquiry and later by formal interrogatories dated June 13, 1989, petitioners have sought to discover information from respondent with respect to certain expenses incurred by respondent. More specifically, petitioners' interrogatories call for respondent to disclose, with respect to employees and nonemployees of the Internal Revenue Service, inter alia, the person's name, the date such person began work on the audits of petitioners presently in question, such person's job title, GS grade and step within the Federal Government, the date such person finished work on the audits in question, such person's highest GS grade and step during the period (if applicable), and the amount of time spent by each such person in the audits in question. Such questions include work performed by such individuals both on the criminal cases previously mentioned as well as the present pending civil cases. Other than compensation payments made to the persons mentioned above, the interrogatories seek information as to any other expenses incurred by respondent in the development of both the criminal and civil cases.

Respondent has now filed a motion for protective order under the provisions of Rule 103, on the grounds that responding to petitioners' interrogatories would be unduly burdensome, that petitioners have not established any colorable basis under which the requested facts would be relevant, and that, in any event, the information sought herein by petitioners is premature, and respondent should not have to respond thereto at the present stage of the cases.

It is petitioners' position here that the information is relevant and material and should be disclosed, because the additions to tax under section 6653(b) determined by respondent against these two petitioners violate the double jeopardy clause of the Constitution, U.S. Const. amend. V, since such additions are punitive in nature rather than remedial, so that the imposition of such additions to tax in

this case would cause petitioners to be punished twice for the same offense for which they have already been subjected to criminal penalties.

Giving relief from discovery is in the sound discretion of the Court, but a party is not entitled to discovery unless a colorable showing is made that the information requested is reasonably related to an issue in the case. Thus, before petitioners here are entitled to the discovery requested, they must show at least a colorable claim to double jeopardy protection, through showing an arguable or possible violation which would make the information sought relevant and material. *Penn-Field Industries, Inc. v. Commissioner,* 74 T.C. 720, 723 (1980).

In the case of *Helvering v. Mitchell,* 303 U.S. 391 (1938), the Supreme Court held that acquittal on a criminal tax fraud charge is not res judicata on the civil fraud charge, because of the difference in burden of proof required in the criminal case as compared to the civil case. The Court further held that Congress may impose both a criminal and a civil sanction for the same offense (tax evasion); the 50-percent civil addition to tax is not criminal but civil, so that considerations of double jeopardy are not involved.

In a recent case, the U.S. Supreme Court considered the constitutionality of imposing a civil penalty after a criminal conviction under the Federal False Claims statute. In *United States v. Halper,* 490 U.S. 435 (1989), the defendant was convicted under the Federal False Claims statute, 18 U.S.C. sec. 287 (1982), for submitting 65 separate false claims to the Government for reimbursement for services rendered. Said section 287 prohibits "mak[ing] or present-[ing] * * * any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent." Halper was sentenced to imprisonment for 2 years and fined $5,000. After his criminal conviction, the Government brought a civil action in the U.S. District Court against Halper under the civil False Claims Act, 31 U.S.C. secs. 3729-3731 (1982). That section is violated when "Any person * * * knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved." Based on the facts established by Halper's

criminal conviction and incorporated in the civil suit, the District Court granted summary judgment for the Government on the issue of liability. Under the remedial provisions of the Civil False Claims Act, it appeared that Halper would be liable for a fixed civil penalty of $2,000 on each of the 65 false claims, as well as for twice the amount of the Government's actual damages of $585 and the costs of the action, or over $130,000.

The District Court concluded that in light of Halper's previous criminal punishment, an additional penalty of this magnitude (more than 220 times greater than the Government's measurable loss) qualified as punishment in violation of the double jeopardy clause. That clause provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The District Court considered the civil act unconstitutional as applied to Halper and, therefore, limited the Government's recovery to double damages of $1,170 and the costs of the civil action.

The Supreme Court, on direct appeal from the District Court under 28 U.S.C. sec. 1252 (1982), stated that "the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. at 440. With respect to the third protection—the one at issue in *Halper* and here— the Supreme Court found that there was no dispute that Halper already had been punished as a result of his prior criminal proceeding when he was sentenced to a jail term and fined $5,000, nor was there a dispute that the civil proceeding and the prior criminal proceeding concerned the same conduct, the submission of 65 false claims. The sole issue there as claimed by the court was "whether the statutory penalty authorized by the civil False Claims Act, under which Halper * * * [was] subject to liability of $130,000 for false claims amounting to $585, constitutes a second 'punishment' for the purpose of double jeopardy analysis." *United States v. Halper, supra* at 441.

In general terms, the Court asked "whether a civil sanction, in application, may be so divorced from any

remedial goal that it constitutes 'punishment' " for the purpose of double jeopardy analysis. *United States v. Halper, supra* at 443.

The Court held that a sanction, civil or criminal, constitutes punishment when the sanction as applied in the individual case serves the goals of punishment—retribution and deterrence. "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *United States v. Halper, supra* at 448. The Supreme Court therefore held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction [for the same offense] to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." In other words, "the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole." *United States v. Halper, supra* at 451.

However, the Supreme Court limited its rule to "the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *United States v. Halper, supra* at 449.

In determining whether a civil sanction is "overwhelmingly disproportionate" to the "damages" suffered by the Government, the Court recognized that the injuries include "not merely the amount of the fraud itself, but also ancillary costs, such as the costs of detection and investigation, that routinely attend the Government's efforts to root out deceptive practices directed at the public purse." *United States v. Halper, supra* at 445. Additional ancillary costs would include litigation expenses. The Court acknowledged that this inquiry will not be an "exact pursuit." *United States v. Halper, supra* at 449. "[T]he process of affixing a sanction that compensates the Government for all its costs

inevitably involves an element of rough justice." *United States v. Halper, supra* at 449.

Summarizing the teachings of *United States v. Halper, supra*, then, they are that:

(1) Civil penalties can be punitive as well as remedial, depending upon the purposes the penalty is intended to serve. "Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." *United States v. Halper, supra* at 448.

(2) Where the penalty is disproportionate to the damage caused the Government, and bears no rational relation to the injury, there is double punishment within the meaning of the double jeopardy clause. Finally, as Justice Kennedy observed in his concurring opinion, the test to be applied is whether a "rational relation" can be said to exist between the damage caused to the Government and the civil remedy which is prescribed. *United States v. Halper, supra* at 453.

The instant cases are clearly distinguishable from *Halper*. First, we may immediately discard petitioner Allied Management Corp. As petitioners' counsel conceded in another hearing herein, Allied Management Corp. was not indicted or convicted (or acquitted) of any evasion of its income tax, so that no question of double jeopardy can be present.

Second, as to petitioner Larry D. Barnette, the structure of the addition to tax is entirely different. Whereas in *Halper* the civil penalty statute provided for a fixed dollar penalty for each separate offense, coupled with damages to the Government in twice the amount of actual damage suffered by the Government, in the instant cases the civil addition to tax provided by section 6653(b) is 50 percent of the deficiency in tax caused by the taxpayer's fraud, and there is no fixed penalty at all. The amount of the addition to tax under section 6653(b) will vary to conform to the actual deficiency which the Court determines, but in no event will it be more than 50 percent of such deficiency. We cannot say that the civil fraud addition of 50 percent is grossly disproportionate to the damage caused to the Government by the taxpayer's fraud, which includes the loss of the tax itself, plus the costs of investigation, detection, and recovery of the lost money. Depending upon

the dollar amount of tax deficiency ultimately determined by the Court, it may turn out that the civil fraud addition of 50 percent, if found applicable, is grossly inadequate to compensate the expense caused to the Government. We find that there is a rational relationship between the 50-percent addition to tax provided by section 6653(b) and the Congressional purpose of compensating the Government for the loss involved. We hold that the civil fraud addition in the circumstances of this case is remedial. See *Lockman v. Commissioner,* T.C. Memo. 1989-585; compare *Starling v. Commissioner,* T.C. Memo. 1989-392.

Accordingly, we conclude that requiring respondent to respond to the instant interrogatories would be oppressive and burdensome, and would produce no facts which are relevant to any issue in the present case. Respondent's motion for protective order should therefore be granted, and

*An appropriate order will be issued.*