Paul L. THOMAS, Petitioner–Appellant,

v.

COMMISSIONER OF the INTERNAL REVENUE SERVICE, Respondent–Appellee.

No. 94–2154.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1995.

Decided Aug. 14, 1995.

ARGUED: Maria McAfee Lynch, Lynch & Eatman, L.L.P., Raleigh, NC, for appellant. Paula Keyser Speck, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee. ON BRIEF: David W. Long, Poyner & Spruill, L.L.P., Raleigh, NC, for appellant. Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen, David I. Pincus, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Before ERVIN, Chief Judge, and WILKINSON and WILKINS, Circuit Judges.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge WILKINSON and Judge WILKINS joined.

## OPINION

ERVIN, Chief Judge:

■■■ This is an appeal from a decision of the tax court holding petitioner, Paul Thomas, civilly liable for deficiencies in income tax payments for the years 1983, 1984, and 1985, as well as for additions to the tax as a consequence of Thomas' civil fraud. While not disputing his liability for the tax deficiencies, Thomas argues that imposing an addition to tax under I.R.C. § 6653(b)(1) violates the double jeopardy protection against multiple punishments for the same offense under the Fifth Amendment and violates the proscription against excessive fines under the Eighth Amendment. Assessment of an addition to tax does not place Thomas in double jeopardy, because involvement in a cocaine conspiracy and failure to pay income tax are separate offenses, and because imposition of an addition to tax for civil fraud is remedial, rather than punitive, in nature. Similarly, the Excessive Fines Clause is not implicated, since the addition to tax is not a punitive measure. Moreover, even assuming arguendo that the imposition of the addition to tax were punitive, the specific amount sought by the government was not excessive. Finding no constitutional infirmities, we affirm.

### I.

In late 1986, agents from the Internal Revenue Service and Customs Service began investigating a narcotics ring in North and South Carolina. Three years later, Paul Thomas was indicted for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. The following year,

a grand jury indicted Thomas on one count of money laundering under 18 U.S.C. § 1956. Thomas pled guilty to both counts, receiving a fifteen-year prison sentence for his role in the conspiracy and an eighteen month sentence for money laundering. The district court reduced the prison term for the conspiracy conviction to four years, and the two sentences were to be served concurrently. As part of his plea agreement, Thomas agreed to forfeit assets worth $98,773 and to pay the government $65,000 from the proceeds of that forfeiture. The government does not dispute that leading up to the present litigation, Thomas has paid a substantial price for his illegal narcotics activity—a four year prison term, a $5,000 fine, and forfeiture of nearly his entire net worth.

Thomas contends that the punishment relating to his conspiracy and money laundering convictions is somehow relevant in evaluating his *civil* liability for not having paid taxes on drug-related income. After Thomas had entered into the plea agreement regarding his criminal activity, the government initiated the present proceeding concerning Thomas' tax liability. The parties stipulated that "[d]uring 1983, 1984, and 1985, petitioner failed to report any of the income from his illegal narcotics sales."[1] Thomas does not dispute that he owes the government $88,135 as reimbursement for the tax deficiencies accrued during those three years. Thomas challenges, however, the imposition of a fraud penalty, amounting to fifty percent of the tax deficiency plus fifty percent of the interest on the deficiency. In this case, the addition to tax amounts to $44,068 plus interest.[2]

---

1. We find wholly unavailing Thomas' argument that the government is barred from collecting taxes and an addition to tax for income accrued in 1985. Thomas provides no explanation as to why the 1985 tax year should be treated differently than the two preceding tax years. Moreover, in light of the parties' factual stipulation, Thomas' bald assertion that the collection of taxes for 1985 is barred by the tolling of a statute of limitations is without merit.

2. The tax court's failure to state the precise amount for which Thomas is liable has led to some confusion at this stage of the proceedings. The $44,068 figure is based on the tax deficiencies listed on page four of the tax court's memo-

randum opinion. According to that chart, Thomas' tax deficiencies totaled $88,135—$24,342 for 1983, $34,202 for 1984, and $29,591 for 1985. Fifty percent of the total deficiency amounts to $44,068. Earlier in its memorandum opinion, however, the tax court had listed the 1983 deficiency as $47,000. Substituting $47,000 for $24,342 as the 1983 deficiency has the effect of increasing the overall civil sanction by $11,329— the difference between fifty percent of $47,000 and fifty percent of $24,342.

At oral argument, counsel for the government acknowledged that at some point in the litigation the tax deficiency for 1983 had been reduced from $47,000 to $24,342. Counsel conceded that she was willing to accept the lower figure

Based on its rulings in *Barnette v. Commissioner*, 95 T.C. 341, 1990 WL 136710 (1990), and *Ianniello v. Commissioner*, 98 T.C. 165, 1992 WL 31236 (1992), the tax court held that imposing an addition to tax for civil fraud did not constitute putting Thomas in jeopardy of being punished twice for the same offense. As had been the case in *Barnette* and *Ianniello*, the tax court found that Thomas' failure to report income was discrete from the underlying illegal activity; and, therefore, no double jeopardy violation existed. The tax court noted that "[i]llegal trafficking in narcotics is one thing; failure to report one's income is something else...." With respect to Thomas' Excessive Fines argument, the tax court recognized that under *Austin v. United States*, — U.S. —, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), it is now possible for forfeitures and fines in civil cases to be regarded as punitive exactions, thus implicating the Eighth Amendment's prohibition against excessive fines. Following the teachings of a First Circuit case directly on this point, *McNichols v. Comm'r of Internal Revenue*, 13 F.3d 432 (1st Cir. 1993), *cert. denied*, — U.S. —, 114 S.Ct. 2705, 129 L.Ed.2d 833 (1994), the tax court found that the additions to tax sought against Thomas were remedial in nature, and thus not violative of *Austin*. Consequently, Thomas' arguments under the Fifth and Eighth Amendment were held to be meritless.

Thomas filed a timely notice of appeal from the decision of the tax court. We note that our jurisdiction rests on 26 U.S.C. § 7482, which provides that the United States courts of appeals "shall have exclusive jurisdiction to review the decisions of the Tax Court ... in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury."

## II.

On appeal, we review *de novo* the legal questions that were before the tax court.

Thomas asks us to determine whether the Fifth Amendment's Double Jeopardy Clause or the Eighth Amendment's Excessive Fines Clause precludes the collection of an addition to tax for civil fraud in light of the punishments already imposed upon Thomas for his conspiracy and money laundering convictions. Finding no merit to either of Thomas' constitutional claims, we affirm the judgment of the tax court.

## A.

One of the primary safeguards of the Fifth Amendment's Double Jeopardy Clause is that it protects individuals against multiple punishments for the same offense. *See* U.S. Const. amend. V. (stating that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb"); *United States v. Halper*, 490 U.S. 435, 441, 109 S.Ct. 1892, 1898, 104 L.Ed.2d 487 (1989); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Thomas mistakenly asserts that he has been put in jeopardy twice "for the same offense"—the sale of illegal drugs. In reality, his participation in a drug conspiracy and his failure to pay income taxes are distinct.

Assessment of an addition to tax does not necessarily follow from a defendant's conviction for § 846 conspiracy. It is possible for a person to participate in the illegal sale of drugs, yet pay taxes based on the income generated by those sales. In that instance, punishment for the drug offense would be proper, but there would be no basis for holding the defendant accountable for tax deficiencies or additions to tax. Conversely, a person could participate in wholly legal activities, yet be delinquent in his payment of income taxes. While there would be no basis for a criminal prosecution relating to the income-generating activity, the government

for the 1983 deficiency. The effect of that concession is to lower the amount of the civil fraud penalty to $44,068 from the $55,397 figure listed in the government's brief.

The specific amount of the addition to tax for civil fraud is relevant to our analysis under the Excessive Fines Clause only insofar as we find it necessary to evaluate the proportionality of the

sanction to the government's expenses in conducting its tax investigation. Thomas' double jeopardy claim is not affected by the exact amount of the addition, because his argument rests upon the proposition that any penalty at all amounts to a second punishment for the same offense.

would be entitled to payment of a tax deficiency and, depending on the amount of the deficiency, possibly to an addition to tax for civil fraud. Like the tax court, we find that Thomas' violations of the criminal and civil law stemmed from wholly distinct conduct. *See Thomas v. Comm'r of Internal Revenue*, 67 T.C.M. (CCH) 2511, 1994 WL 100605, *8 (U.S.Tax Ct.1994) (noting that the fraudulent failure to report income "is discrete from the fact that [petitioner] also had been convicted of illegal narcotic sales").

Thomas' constitutional claim under the Double Jeopardy Clause is more seriously weakened by the fact that he is not facing multiple *punishments* for the same course of conduct. *See United States v. Morgan*, 51 F.3d 1105, 1108 (2d Cir.1995) (noting that key word to be understood in appeal brought under Double Jeopardy Clause is "punishment"). For over fifty years, the addition to tax has been regarded as remedial, rather than punitive, in nature. In *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), the Supreme Court noted that "[t]he remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation." *Id.* at 401, 58 S.Ct. at 634. Additions to tax are provided "primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Id.*

The punitive/remedial distinction in the context of double jeopardy claims is often determined based upon a consideration of the proportionality between the civil penalty assessed and the government's actual damages. A civil sanction will be construed as an additional punishment only if it bears no relation to the government's loss. *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902; *see also Morgan*, 51 F.3d at 1108 (citing *Halper* for proposition that punitive goals of retribution and deterrence are found to exist only when "the sanction is overwhelmingly disproportionate to the damages caused"). The *Halper* Court recognized that there may be circumstances in which "a civil sanction, in application, may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of

double jeopardy analysis." *Halper*, 490 U.S. at 443, 109 S.Ct. at 1899. In such instances, the civil sanction will be serving a primarily retributive or deterrent function, rather than a remedial one. *Id.* at 449, 109 S.Ct. at 1902.

In *Halper*, the defendant had been convicted on sixty-five counts of violating the criminal false-claims statute, 18 U.S.C. § 287, by submitting fraudulent medicare claims. After Halper had received a two-year prison term and a $5,000 fine, the Government filed a separate civil action under the False Claims Act, 31 U.S.C. §§ 3729–3731, to recover a $2,000 penalty for each of the sixty-five counts of fraud. Halper claimed that the $130,000 penalty constituted a second punishment for crimes for which he had already been sentenced. Critical to the Court's review of the constitutionality of the civil penalty was the fact that Halper's fraudulent scheme had netted him only $585 in excess payments and that the government's costs in piercing this fraud had amounted to $16,000. The Court deemed the $130,000 civil penalty punitive rather than remedial, because the relief was "sufficiently disproportionate" to the costs incurred by the Government. *Halper*, at 452, 109 S.Ct. at 1904. Abandoning the traditional labels of "criminal" and "civil" that had previously guided the Court's double jeopardy analysis, the *Halper* Court recognized that "[i]t is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties." *Id.* at 447, 109 S.Ct. at 1901; *see also Morgan*, 51 F.3d at 1114 (noting that "[l]abels such as 'criminal' and 'civil,' 'fine' and 'repayment' are not controlling"). Since *Halper*, double jeopardy analysis has focused on whether the characteristics of the sanction are punitive in nature, rather than on whether the sanction was levied in the criminal or civil context.

Unlike *Halper*, in which "the amount sought by the government overwhelmed any realistic estimate of the government's pecuniary loss," *United States v. Cullen*, 979 F.2d 992, 995 (4th Cir.1992), the ratio between Thomas' tax liability and the government's expenses is far more reasonable. *See Halper*, 490 U.S. at 439, 109 S.Ct. at 1897 (a civil

penalty "more than 220 times greater than the Government's measurable los[s] qualified as punishment which ... was barred by the Double Jeopardy Clause"). The Government seeks a civil sanction of $44,068 in addition to the $88,135 tax deficiency owed by Thomas for 1983, 1984, and 1985. Whether $44,068 is precisely the amount needed to compensate the Government for the cost of investigating the commission of the tax fraud is not the question before this court. As *Halper* teaches, "the Government is entitled to rough remedial justice." *Halper*, 490 U.S. at 446, 109 S.Ct. at 1900; *see id.* at 449, 109 S.Ct. at 1902 (noting that "the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice"); *see also Morgan*, 51 F.3d at 1108 (civil sanction did not bear "so little relationship to making the government whole as to shock the conscience of the court"). The amount of the sanction sought by the Government suggests to us that the underlying purpose of the civil sanction imposed against Thomas was to compensate the government, rather than to punish Thomas. *Id.* at 448, 109 S.Ct. at 1901–02. Moreover, the $44,068 bears a much closer relationship to the $259,000 Thomas accrued from his illegal activities than did the $130,000 penalty the government imposed on Halper for his $585 worth of profit.

While *Halper* provides us with an effective starting point for our double jeopardy analysis, we find far more instructive the Court's recent decision in *Montana Dept. of Revenue v. Kurth Ranch*, — U.S. —, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), in which the Court considered whether a tax may be punitive in a manner similar to that of the civil forfeiture in *Halper. See McNichols*, 13 F.3d at 435 (reasoning that "[t]o use *Halper* as a base for vaulting into the tax arena would be to misapply the case and distort its holding"). In *Kurth Ranch*, the Court evaluated the constitutionality of the Montana Dangerous Drug Tax Act and focused, in particular, on whether "a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty *for the same conduct* may violate the constitutional prohibition against successive punishments for the same offense." *Id.* at —, 114 S.Ct. at 1941.

The Court struck down the Montana law as violative of the Double Jeopardy Clause, but the decision was based, in large measure, on the fact that the defendants' $900,000 in tax liability was not rationally related to the damages suffered by the government. *Kurth Ranch*, — U.S. at —, 114 S.Ct. at 1945; *see also Halper*, 490 U.S. at 451, 109 S.Ct. at 1903 (holding that the civil monetary judgment must be "rationally related to the goal of making the Government whole"). Moreover, the Montana tax applied regardless of whether the defendants had paid taxes on income generated from their narcotics activity.

In this litigation, Thomas is being treated no differently than any other person who has failed to pay income tax. The fact that Thomas earned his income through illegal sources is irrelevant for purposes of our analysis. Unlike the defendants in *Kurth Ranch*, who were taxed *because of* their illegal activity, Thomas would face this tax liability regardless of the source of his income. *See id.* at —, 114 S.Ct. at 1947 (noting that "[p]ersons who have been arrested for possessing marijuana constitute the entire class of taxpayers subject to the Montana tax"). The "so-called" Montana tax was "conditioned on the commission of a crime," *id.* at —, 114 S.Ct. at 1947, while imposition of the addition to tax in this case had nothing to do with Thomas' underlying criminal activity.

There is a further suggestion from the *Kurth Ranch* Court that the collection of an addition to tax in the present case would not transgress the Double Jeopardy Clause. *See Kurth Ranch*, — U.S. at —, 114 S.Ct. at 1945 (noting that "Montana no doubt could collect its tax on the possession of marijuana, for example, *if it had not previously punished the taxpayer for the same offense*") (emphasis added). Here, Thomas has never been punished for avoiding his tax obligation for 1983, 1984, and 1985. This case would take on a *Kurth Ranch* quality only if the addition to tax were being imposed despite Thomas' having paid his taxes in a timely fashion.

The addition to tax imposed in this case is at the opposite end of the punitive/remedial

spectrum from the tax levied in *Kurth Ranch.* As the Supreme Court stated in that case:

> Taken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis.

*Id.* at ——, 114 S.Ct. at 1948. The Montana legislature had made it clear that the exorbitant tax was intended to deter people from possessing marijuana. As a further distinguishing feature between the *Kurth Ranch* tax and the tax imposed in this case, the civil sanction to be exacted from Thomas is remedial in character, because "it merely reimburses the government for its actual costs arising from the defendant's criminal conduct." *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1945 (citing *Halper,* 490 U.S. at 449–50, 109 S.Ct. at 1902). There was no suggestion in *Kurth Ranch* that the $900,000 tax, which was eight times the drugs' market value, served a merely remedial purpose.

"[A]t some point, an exaction labeled as a tax approaches punishment," *id.* at ——, 114 S.Ct. at 1946, yet we do not find that the tax assessed in this case crosses that threshold. As the Second Circuit recently observed in *Morgan,* "[a] line is drawn because civil actions instituted to remedy or recoup financial losses the government has suffered, on the one side, and actions taken to achieve retribution or deterrence in order to uphold public justice, on the other side, are separate and distinct." *Morgan,* 51 F.3d at 1113. We find that the $44,068 sanction imposed on Thomas does no more than compensate the government for its damages and costs. We need only ensure that "rough justice" has been meted out, *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902, and like the Second Circuit in *Morgan,* "[w]e cannot say that this civil sanction is so divorced from the reality of what the government suffered in damages and expenses as to constitute punishment." *Morgan,* 51 F.3d at 1115 (citing *Halper,* 490 U.S. at 442, 109 S.Ct. at 1898). Because this civil sanction does not "cross[ ] the line between remedy and punishment," *Halper,* 490 U.S.

at 450, 109 S.Ct. at 1902, Thomas' double jeopardy argument fails.

### B.

The Supreme Court's holding in *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), modified the long-standing principle that the Eighth Amendment's Excessive Fines Clause relates only to the imposition of criminal, rather than civil, sanctions, in much the same way that *Halper* shed the criminal-civil distinction in the Double Jeopardy realm. After *Austin,* "the question is [no longer] ... whether forfeiture under §§ 881(a)(4) and (a)(7) is civil or criminal, but rather whether it is punishment." *Id.* at ——, 113 S.Ct. at 2806; *see also Browning–Ferris Industries v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989) (recognizing that, at the time of the drafting and ratification of the Eighth Amendment, "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense"). The *Austin* Court recognized that it is possible for civil proceedings to advance punitive, as well as remedial, goals. *Austin,* —— U.S. at ——, 113 S.Ct. at 2806. Concluding that the forfeiture statutes were punitive in nature, and therefore, "subject to the limitations of the Eighth Amendment's Excessive Fines Clause," *id.* at ——, 113 S.Ct. at 2812, the *Austin* Court remanded the case to the lower courts for a determination of whether the forfeiture in that instance constituted punishment.

The fact that *Austin* dealt only with forfeiture statutes has not stopped defendants from trying to apply the case in the tax penalty context. In *McNichols,* the First Circuit reviewed facts identical to the ones presently before us and held that the assessment of an addition to tax does not run afoul of the Excessive Fines Clause simply because the defendant had been required to forfeit illegally gained property in a preceding criminal action. Defendant McNichols attempted to use *Austin* as a "springboard," 13 F.3d at 434, and argued that additions to income tax were potentially punitive in much the same way as are forfeitures under 21 U.S.C. §§ 881(a)(4) and (a)(7). McNichols

made the same Excessive Fines argument to the First Circuit that Thomas now makes in front of this court. The First Circuit declined to apply *Austin*, a civil forfeiture case, to a civil income tax case. The court was unwilling to issue a holding that would have enabled a defendant to shield himself from tax liability by invoking the Excessive Fines Clause any time he obtained his income through a criminal enterprise for which he had been punished previously.

We, likewise, refuse to apply *Austin* in this context. Like McNichols, Thomas cannot identify any portion of the *Austin* opinion which suggests that the Court intended for its Eighth Amendment analysis to extend beyond the civil forfeiture context. *Austin* focuses on whether *forfeitures* have historically been punitive in nature. *See Austin,* —— U.S. at —— – ——, 113 S.Ct. at 2806–12. Moreover, McNichols and Thomas each stipulated to the tax court that they derived unreported taxable income from drug sales. *See McNichols,* 13 F.3d at 434. Finally, nothing in the text of Thomas' plea agreements could have given him the impression that the government would ignore violations of the tax laws. Each plea agreement included the following warning:

> No agreements, representations, or understandings have been made between the parties in this case other than those which are explicitly set forth in this Plea Agreement, and none will be entered into unless executed in writing and signed by all the parties.

*Joint Appendix,* at 218; *cf. McNichols,* 13 F.3d at 433 (spelling out in plea agreement that "the United States Attorney's Office makes no promises with respect to any civil tax liability incurred by Mr. McNichols").

If *McNichols* had held that the addition to tax constituted an Eighth Amendment violation, convicted criminals who are required to forfeit property as part of their punishment would, in effect, be insulated from having to pay taxes on income stemming from their illegal acts. We also recognize the inequity of such a situation—one in which honest people would continue paying taxes on all types of income, while criminal defendants would be relieved of the duty to pay income taxes on money obtained through illegal ventures. "We should not continue to confound confusion, particularly when the result would be to perpetuate the injustice of relieving embezzlers of the duty of paying income taxes on the money they enrich themselves with through theft while honest people pay their taxes on every conceivable type of income." *James v. United States,* 366 U.S. 213, 221, 81 S.Ct. 1052, 1056, 6 L.Ed.2d 246 (1961).

Even assuming arguendo that the Excessive Fines Clause is implicated in this case, there is no basis for concluding that the $44,068 sanction is excessive. If the addition to tax is always calculated as fifty percent of the tax deficiency regardless of the means by which the income is accrued, the sanction could not be excessive as to one person, but not excessive as to another. All persons forced to pay additions to tax for civil fraud are treated in the same manner. Furthermore, a civil fraud penalty of approximately $40,000—even when compounded with the $65,000 forfeiture and $5,000 fine—does not strike us as excessive in light of the $259,500 Thomas received through his drug enterprise or the substantial expenses incurred by the IRS in its four year investigation of Thomas' drug ring.

### III.

Although Thomas may feel as if he is continuing to pay a price for crimes for which he has already served time in prison, paid a fine, and forfeited a substantial portion of his net worth, an important distinction exists between the punishment exacted in the criminal arena and the remedial sanction sought in this civil proceeding. Requiring Thomas to pay an addition to tax of $44,068 does not implicate Fifth or Eighth Amendment concerns. The judgment of the tax court is accordingly

*AFFIRMED.*