**UNITED STATES of America,**

v.

**Rebecca SANTOSDEDIOS, Defendant.**

**No. CR. 02–2812M.**

United States District Court,
D. Maryland,
Southern Division.

Dec. 31, 2002.

Albert T. Gombis, Captain, USAF, Special Assistant United States Attorney, Andrews Air Force Base.

Carrie H. Corcoran, Esquire, Assistant Federal Public Defender, Office of the Federal Public Defender, Baltimore.

### MEMORANDUM OPINION DENYING DEFENDANT'S MOTION TO DISMISS

DAY, United States Magistrate Judge.

Rebecca Santosdedios ("Defendant") has been charged by criminal complaint with one count of theft of government property, in violation of 18 U.S.C. § 641. The Court now has before it Defendant's Motion to Dismiss and the Government's Response in Opposition to Defendant's Motion to Dismiss. ("Defendant's Motion") ("Government's Opposition"). No hearing is deemed necessary. Local Rule 105.6 (D.Md.). For the reasons presented below, the Court hereby DENIES Defendant's Motion.

### I. Background

At issue in this case is whether the Double Jeopardy Clause is violated when an individual is prosecuted for theft of government property after having paid a statutory penalty arising out of the same conduct under the AAFES civil recovery program. The Government alleges that on or about August 19, 2002, at the Andrews Air Force Base Main Exchange ("Main Exchange"), Defendant attempted to steal two tubes of lipstick. On October 7, 2002, the store manager of the Main Exchange wrote Defendant a letter stating, in part:

This Exchange has a report showing that on 19 August 2002 you were detained for taking two Loreal Lipsticks without permission and without rendering proper payment for the items. Federal law authorizes [Army and Air Force Exchange Service] AAFES to demand in writing that you pay the following actual and administrative costs relate (sic) to shoplifting, theft detection, and theft prevention.... This letter serves as notice that if you fail to pay your debt within 60 days of this notification, AAFES will take the following actions as appropriate:

a. Assess interest and penalties under the provisions of 31 U.S.C. [§ ] 3717....

b. Disclose your indebtedness to a consumer-reporting agency under the provisions of 31 U.S.C. [§ ] 3711....

c. Initiate collection action of this indebtedness through salary offset as authorized ... under provisions of 5 U.S.C. [§ ] 5514....

d. Initiate action to offset the amount of your debt against any disbursement of the Department of Treasury to which you may be entitled, to include offset against Federal income tax returns....

Your check cashing and DPP privileges have been suspended. If you voluntarily pay the Civil Recovery amount listed above within 60 days from the date of this notice, these privileges will be reinstated provided there are not other delinquent debts. Amounts not paid within 30 days from this notice will be reported to the Unit Commander. These civil proceedings do not prevent criminal prosecution for the alleged act of shoplifting.

Defendant's Motion ex. A.

The actual amount demanded from Defendant was "$7.28, which represents the

full retail price of the recovered property that is not in salable condition" plus $200 in actual and administrative costs. *Id.* The store manager's letter also informed Defendant that should she "disagree with this demand, or believe that all or part of this debt is not valid or legally enforceable" that she could contest the demand by contacting the Main Exchange's General Manager. *Id.* Defendant did not dispute the claim, but instead paid $207.28 to the Main Exchange. Defendant's Motion.

## II. Discussion

Pursuant to the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The United States Supreme Court has held that the Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *See United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), rev'd on other grounds, (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), rev'd on other grounds); *See also United States v. Ursery,* 518 U.S. 267, 273, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). The first two protections under the Double Jeopardy Clause are clearly inapplicable to the instant case because Defendant is not facing a second prosecution after a prior conviction or acquittal. Defendant relies upon the third prong for her motion to dismiss.

There are two steps that the Supreme Court considers to determine whether a statutory penalty amounts to a criminal sanction. First, the Court determines whether the legislature "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or another." *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). Second, even where a criminal penalty was not the legislature's intent, a further inquiry must be made as to whether the statute's purpose or effect in fact "transform[s] what was clearly intended as a civil remedy into a criminal penalty." *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (quoting *Rex Trailer Co. v. United States,* 350 U.S. 148, 154, 76 S.Ct. 219, 100 L.Ed. 149 (1956)).

A. *The legislative history of the statute under which the AAFES civil recovery program was implemented is a civil statute.*

◼ The AAFES civil recovery program was instituted under the authority granted to government agencies to collect debts pursuant to the Federal Claims Collection Act of 1966, Pub.L. No. 89–508, 80 Stat. 308, as amended by the Debt Collections Act of 1982, Pub L. No. 97–365, 96 Stat. 1758, and the Debt Collection Improvement Act of 1996, Pub.L. No. 104–134, § 31001, 110 Stat. 1321, and further amended in 2001 by Pub.L. No. 107–107, § 335, which are codified at 31 U.S.C. § 3701, *et seq.* Asserting that the debt collected under 31 U.S.C. § 3701(b)(1)(B) establishes a criminal sanction, which she has paid, Defendant argues that her subsequent prosecution under 18 U.S.C. § 641 violates the Double Jeopardy Clause. Defendant's Motion at 2.

This Court finds no evidence that Congress' intent was to provide anything other than civil measures that the Federal government could use to collect debts. First, the Main Exchange's demand letter was issued pursuant to a grant of authority under 31 U.S.C. § 3711, which provides, in part, that: "The head of an executive, judicial, or legislative agency—(1) shall try

to collect a claim of the United States Government for money or property arising out of the activities of, or referred to, the agency." 31 U.S.C. § 3711(a)(1). Conferring such authority to administrative agencies "is prima facie evidence that Congress intended to provide for a civil sanction." *Hudson,* 522 U.S. at 103, 118 S.Ct. 488. This placement of the collection authority with the head of an agency is persuasive evidence, notwithstanding that one of the agencies is the judiciary, because such authority was not granted to be enforced "by a judicial trial." *Id.* (citing *Wong Wing v. United States,* 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896)) (stating that the quintessential criminal punishments may be imposed only "by a judicial trial").

The purpose of this statutory scheme was to provide the government with additional means of collecting amounts due to it. Notably, 31 U.S.C. § 3711 does not provide for criminal prosecution or restrictions on life or liberty at all.[1] The language of the statute and its stated purpose clearly imply that Congress intended to employ civil measures to collect debts due to the Federal government. Defendant argues that because Congress did not label the monetary penalty as "civil" or "criminal" in nature, this Court must apply a rule of lenity and resolve the alleged ambiguity in favor of Defendant. Defendant's Motion at 3. On the contrary, the Fourth Circuit Court of Appeals has not applied a rule of lenity where the moving party has failed to show that a civil statute was punitive in nature. *See Brewer v. Kimel,* 256 F.3d 222, 228 (4th Cir.2001) (holding that the imposition of a thirty-day period of administrative license revocation did not

amount to criminal punishment so as to prevent a later prosecution for driving while impaired). Here, Defendant has failed to show that the present statute is criminal in nature or that a rule of lenity should be invoked to direct a similar result.

B. *The civil recovery program is not so punitive in form or effect as to constitute a criminal penalty.*

■ Even where legislative intent indicates that a sanction is not a criminal punishment, Double Jeopardy analysis requires that the Court consider whether "the form and effect" of the civil sanction renders it "criminal despite Congress' intent to the contrary." *Hudson,* 522 U.S. at 104, 118 S.Ct. 488. The form and effect must be assessed under the seven guideposts set forth in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), and reiterated in *Hudson,* used to determine whether a sanction is criminal:

(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishmentretribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Hudson,* 522 U.S. at 99, 118 S.Ct. 488.

In disavowing the approach employed in

---

1. As provided in the statute, "the head of such agency shall take all" of the following measures listed as "appropriate steps to collect such debt," before discharging any delinquent debt owed to any agency: "(A) administrative offset, (B) tax refund offset, (C) Federal salary offset, (D) referral to private collection con-

tractors, (E) referral to agencies operating a debt collection center, (F) reporting delinquencies to credit reporting bureaus, (G) garnishing the wages of delinquent debtors, and (H) litigation or foreclosure." 31 U.S.C. § 3711(9).

*U.S. v. Halper* [2] and reaffirming the analysis used in *Kennedy* and *Ward,* the Court went on to note that "these factors must be considered in relation to the statute on its face and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson,* 522 U.S. at 100, 118 S.Ct. 488 (quoting *Ward,* 448 U.S. at 249, 100 S.Ct. 2636) (internal quotation marks omitted). This Court notes that many of the factors above lead to the conclusion that the AAFES civil recovery program is not a criminal punishment.

(1) *The AAFES civil recovery program did not impose an affirmative disability or restraint upon Defendant.*

■ The AAFES has not placed an "affirmative disability or restraint, as that term is normally understood," on Defendant by simply contacting Defendant and demanding that she pay a debt of $207.28. *Hudson,* 522 U.S. at 104, 118 S.Ct. 488. Defendant argues that "the statutory scheme, as implemented by the [AAFES], imposed an affirmative obligation by mandating that Ms. Santosdedios pay a penalty of $200 as well as restitution of $7.28." Defendant's Motion at 4. Defendant misunderstands the Supreme Court's guidance. The test is not one of whether an *affirmative obligation* has been placed upon an individual, it is whether an *affirmative disability or restraint* has been placed upon that person. The Government correctly notes that the language "affirmative disability or restraint" has ordinarily been applied "in the context of imprisonment or execution, as it is a reference to the Fifth Amendment's prohibition against 'being twice put in jeopardy of life or limb.' " Government's Opposition at 8 (citing *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)). The fine imposed here, similar to the debarment from banking activities and fines imposed in *Hudson,* is "certainly nothing approaching the 'infamous punishment' of imprisonment." *Id.* (citing *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)). The AAFES civil recovery program did not impose an affirmative disability or restraint upon Defendant.

(2) *Payment of a debt has not been historically regarded as punishment.*

The Supreme Court has clearly stated that money penalties have not been historically viewed as a solely criminal punishment since "the payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforcible by civil proceedings since the original revenue law of 1789." *Hudson,* 522 U.S. at 104, 118 S.Ct. 488. Defendant cites *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) and *United States v. King,* 824 F.2d 313 (4th Cir.1987) in support of the argument that "the imposition of a set penalty for an alleged offense falls within those kinds of remedies historically viewed as punitive in nature." Defendant's Motion at 5. The case at hand is distinguishable from both of those cases.

---

**2.** In reaffirming the *Kennedy* approach, the Court observed that:

The analysis applied by the *Halper* Court deviated from our traditional [D]ouble [J]eopardy doctrine in two key respects. First, the *Halper* Court bypassed the threshold question: whether the successive punishment at issue is a "criminal" punishment. Instead, it focused on whether the sanction, regardless of whether it was civil or criminal, was so grossly disproportionate to the harm caused as to constitute "punishment." In so doing, the Court elevated a single *Kennedy* factor—whether the sanction appeared excessive in relation to its nonpunitive purposes—to dispositive status. *Hudson,* 522 U.S. at 101, 118 S.Ct. 488.

In *Kurth Ranch*, the Court held that the Montana's Dangerous Drug Tax ("MDDT") [3] was "not the kind of remedial sanction that may follow the first punishment of a criminal offense." *Id.* at 784. The holding was reached because the MDDTs "unusual features" rendered it a second punishment.[4] The AAFES program is not conditioned upon Defendant having been convicted of a criminal offense, or even arrested or charged with a crime. Unlike the MDDT, the legislative history of the statute authorizing the AAFES civil recovery program, as discussed above, reflects no intent to impose criminal sanctions at all. Defendant's reliance on *Kurth Ranch* is misplaced.

In *King*, the Fourth Circuit considered whether a federal court may impose the special assessment provided for when an individual is convicted of a federal crime, on a defendant convicted under 18 U.S.C. § 13, the Assimilative Crimes Act ("ACA"), of a state offense for which conviction would not subject the defendant to a similar assessment under state law.[5]

---

**3.** *Kurth Ranch* is not directly controlling because the Court specifically noted that the MDDT did not "raise the question whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character." *Kurth Ranch*, 511 U.S. at 782, n. 21, 114 S.Ct. 1937 ("This case presents the question whether a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense"). The MDDT was enacted to impose a tax assessed on the market value of certain listed "dangerous" drugs as determined by the Montana Department of Revenue (DOR) based "on the possession and storage of dangerous drugs." *Kurth Ranch*, 511 U.S. at 770, 114 S.Ct. 1937. Under the DOR's rules, "taxpayers must file a return within 72 hours of their arrest." *Id.* After the Kurths pled guilty to drug possession charges, the DOR "ultimately attempted to collect almost $900,000 in taxes" on various drugs possessed by the Kurths. *Id.* at 773, 114 S.Ct. 1937. That assessment would have taxed the Kurths at approximately 400% of the market value of the drugs they possessed. *Id.* at 781, n. 17, 114 S.Ct. 1937.

**4.** Those features included: (1) its application is conditioned on the commission of a crime; (2) the legislative history reflected a desire for anti-crime initiatives; (3) there could be no mixed-motive of generating revenue while discouraging the underlying activity because the triggering activity was completely forbidden; (4) the statutory language regarding a tax on possession could not be reconciled with the actual application of the tax well after the taxpayer is no longer in possession of the dangerous substance; and (5) the assessment was never claimed to even remotely approximate the costs of investigating, apprehending and prosecuting the Kurths, or that it roughly related to any actual damages caused to the State. *See Kurth Ranch*, 511 U.S. at 782–84, 114 S.Ct. 1937; *see also Lynn v. West*, 134 F.3d 582 (4th Cir.1998) (holding that the North Carolina Controlled Substance Tax shared several of the unusual features of the MDDT—including an effective tax rate well in excess of that imposed on the Kurths, and was therefore a criminal punishment, however the Double Jeopardy Clause did not apply because the defendant was being punished a second time by a different sovereign). *But see Vick v. Williams*, 233 F.3d 213 (4th Cir.2000) (holding that for writ of habeas corpus purposes, the North Carolina state court's holding that the North Carolina Controlled Substance Tax is a civil penalty, distinguishable from the MDDT imposed in *Kurth Ranch*, was not contrary to or an unreasonable application of clearly established federal law).

**5.** King was convicted under the ACA for violating an assimilated Maryland law prohibiting driving in Fort Meade under the influence of alcohol. *King*, 824 F.2d at 314. The Fourth Circuit held "that a federal court could not apply the federal assessment to someone convicted of an assimilated Maryland traffic offense without violating the ACA's admonition that federal convictees be subject to a 'like punishment' as state convictees" because the assessment was punitive, and could therefore "not be imposed upon a person convicted under the ACA unless the applicable state law provide[d] a 'like punishment.'" *Id.* at 314–18.

*King,* 824 F.2d at 314. The Court reasoned that the assessment was punitive because: (1) it was only imposed following conviction; (2) the legislative history referred to the assessment as a "penalty fee;" and (3) the failure to pay the assessment could result in further imprisonment. *King,* 824 F.2d at 316–17. However, unlike the situation in *King,* the AAFES civil recovery demand may be made prior to or simultaneously with a criminal prosecution. The demand could be imposed without any criminal prosecution or conviction at all. As discussed above, the legislative history of the statutes from which the authority to institute the AAFES civil recovery program is derived, gives no indication that any criminal punishment was intended. In addition, failure to pay the debt demanded by the Main Exchange could not result in the imposition of any period of imprisonment, or be a factor where any such punishment could otherwise be imposed.

The AAFES civil recovery program is distinguishable from the penalties assessed in *Kurth Ranch* and *King.* Neither case offers the "clearest proof" that the debt collected under the AAFES civil recovery program would have historically been regarded as punishment.

(3) *The demand that the debt be paid under the AAFES civil recovery program did not require a finding of scienter.*

The civil recovery program does not come into play *only* on a finding of scienter. Notably, there is no *mens rea* requirement in the civil statute authorizing the collection of this debt. Government's Opposition at 9. The demand letter did not accuse Defendant of a crime *per se,* and the demand was not made based on any reference to Defendant's state of mind.[6] *See Hudson,* 522 U.S. at 104, 118 S.Ct. 488. Further, there is no requirement that an individual be found to have violated a criminal statute before being properly fined.[7]

6. *Compare* 18 U.S.C. § 641, which punishes by fine, imprisonment, or both: "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; ..." 18 U.S.C. § 641. Although the pertinent portion of the statute does explicitly include a *mens rea* element, 18 U.S.C. § 641 has an *implied scienter* element given that stealing is understood to encompass a dishonest state of mind. *See United States v. Turley,* 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957)(discussing the terms used in the National Motor Vehicle Theft Act to denote "embezzlement," the Supreme Court noted "that where a federal criminal statute uses a commonlaw term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." Whereas the Court observed that " 'stolen' (or 'stealing') has no accepted common-law meaning," dicta provides that those terms have over time become "the generic designation for dishonest acquisition").

7. Defendant argues that "the government's ability to lawfully extract a monetary penalty from Ms. Santosdedios is predicated on her having committed the alleged act with the guilty state of mind necessary to support conviction ... [a]ccordingly, the monetary fine is predicated on a finding of scienter." Defendant's Motion at 5. Defendant reasons that "if at trial, it were proven that a defendant unknowingly walked away with government property by mistake, with no intent to steal, it seems inarguable that the federal government could not lawfully demand that the defendant pay a monetary penalty anyway, based on a 'theft' that never occurred." *Id.* Defendant's argument is flawed because it assumes a procedure that is contrary to that provided by the statutes at hand and contrary to AAFES' implementation of the statutes. The demand letter that the AAFES Main Exchange issued refers to Defendant allegedly having taken government property "without permission and without rendering proper payment for the items." That statement contains no reference to, or allegation of, an intent to steal.

One could very well exit the Main Exchange with merchandise "without permission and without rendering proper payment for the items," with no intent to steal the merchandise, and still be subject to the debt demanded under the AAFES civil recovery program. The store manager's demand for payment from Defendant did not require any finding of scienter.

(4) *The AAFES civil recovery program does not serve the traditional aims of criminal punishment.*

The Supreme Court has held that while *in rem* civil forfeiture proceedings are generally not criminal punishments, that *in personam* civil penalties "could, in some circumstances, be punitive." *Ursery,* 518 U.S. 267, 275, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (holding that civil *in rem* forfeitures are not criminal punishments for Double Jeopardy purposes). However, the Court has also stated that "all civil penalties have some deterrent effect ... [i]f a sanction must be 'solely' remedial (*i.e.,* entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." *Hudson,* 522 U.S. at 103, 118 S.Ct. 488 (citations omitted). The Fourth Circuit has held that this prong of the *Hudson* analysis "is at best neutral." *Brewer,* 256 F.3d at 229. Given the purpose of the AAFES civil recovery program, discussed below, the program is more analogous to assessments upheld as remedial in character because it "merely reimburses the government for its actual

costs arising from the defendant's criminal conduct." *See Kurth Ranch,* 511 U.S. at 777, 114 S.Ct. 1937; *See also Thomas v. IRS,* 62 F.3d 97 (4th Cir.1995) (holding that the assessment of additions to tax on unreported income from the same drug-related activities underlying criminal convictions, was remedial because additions to tax are provided as primarily a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud)(internal quotation marks and citation omitted). Although the imposition of penalties in this case may deter others from emulating Defendant's alleged conduct, which is a traditional goal of criminal punishment, the mere presence of this purpose is insufficient to render a sanction criminal. See *Hudson,* 522 U.S. at 102, 118 S.Ct. 488 (citations omitted).

(5) *The AAFES civil recovery program applies to conduct that may be punished criminally.*

Assuming *arguendo* that the debt may only be incurred by engaging in allegedly criminal conduct, the Supreme Court has declared that "Congress may impose both a criminal and civil sanction in respect to the same act or omission." *Ward,* 448 U.S. at 250, 100 S.Ct. 2636. State and Federal legislatures have, on numerous occasions, authorized civil sanctions to be imposed that did not prevent the subsequent criminal prosecution of an individual, or have allowed for civil sanctions to follow a criminal prosecution.[8] This factor favors

---

8. *See, e.g., Ursery,* 518 U.S. at 292, 116 S.Ct. 2135 (though the *in rem* civil forfeiture and criminal statutes at issue were both "tied to criminal activity, ... this fact is insufficient to render the statutes punitive"); *Hudson,* 522 U.S. at 105, 118 S.Ct. 488 (same conduct for which administrative sanctions of money penalties and debarment were imposed under federal banking statutes was punishable under federal criminal statutes regarding conspiracy, misapplication of bank funds, and

making false bank entries without offending Double Jeopardy principles) (internal citations omitted); *Brewer,* 256 F.3d at 229 (driver's license revocation for thirty days under state statute allowing for an administrative license revocation ("ALR") did not bar subsequent state criminal prosecution for driving while impaired because ALR was not so punitive in purpose or effect to render it a criminal sanction); *United States v. Bouchey,* 949

Defendant, but alone, does not offer the "clearest proof" that the AAFES civil recovery program is a criminal punishment simply because Defendant may be subject to both a civil penalty and criminal punishment for the same conduct.

(6) *The AAFES implementation of a civil recovery program is rationally related to non-punitive purposes and does not impose an excessive burden given its purpose.*

The purpose of the relevant federal debt collections acts are to provide the federal government with means to collect debts. The AAFES civil recovery program was instituted to recoup non-appropriated funds[9] spent to detect and prevent shoplifting. The Government also notes that the costs paid related to shoplifting drain resources from the military community as a whole because those costs reduce, by millions of dollars each year, the dividend AAFES can pay to Armed Forces Morale, Welfare, and Recreation programs, which are funded by AAFES with non-appropriated funds. Government's Motion at 5. The AAFES civil recovery program clearly

has a purpose other than criminally punishing those individuals detained for taking items "without permission and without rendering proper payment for the items" from the Main Exchange. The purpose of the civil recovery program is to compensate AAFES for expenditures of non-appropriated funds rather than to punish or rebuke Defendant.

The administrative costs of $200 demanded from Defendant were not excessive in relation to the purpose of the demand. For Double Jeopardy purposes, the Court requires that we "balance[ ] the size of a particular civil penalty against the Government's harm" in determining whether a civil penalty was a criminal punishment. *See Ursery,* 518 U.S. at 283, 116 S.Ct. 2135 (citations omitted). Here, a person suspected of shoplifting is "civilly liable for actual damages, if any, and a flat rate administrative cost of $200," which was arrived at "after reviewing [the Main Exchange's] annual security costs." Government's Opposition at 5. The Government maintains that the flat administrative charge of $200 on every shoplifting incident does not fully recoup AAFES' admin-

---

F.Supp. 9 (D.D.C.1996) (civil action against government official to forfeit illicit gains earned from abuse of office under the False Claims Act, 31 U.S.C. § 3729, following convictions for conspiracy in violation of 18 U.S.C. § 317 and conflict of interest in violation of 18 U.S.C. § 208, based on same conduct, was not a subsequent criminal punishment for Double Jeopardy purposes); *United States v. Haywood,* 864 F.Supp. 502 (W.D.N.C.1994) (civil penalty of $280,000 authorized by federal money laundering statute was not barred under Double Jeopardy principles where individual was also subject to criminal punishment for failing to file a required report as required by federal law for the same cash transaction); *United States v. J & T Coal, Inc.,* 818 F.Supp. 925 (W.D.Va. 1993) (criminal prosecution for willful violations of mandatory safety standards in violation of 30 U.S.C. § 820(d), subsequent to the imposition of civil sanctions for violation of

30 U.S.C. § 820(a), was not multiple punishment in contravention of Double Jeopardy Clause because J & T Coal failed to prove the assessments under 30 U.S.C. § 820(a) were punitive rather than remedial).

**9.** In 31 U.S.C. § 3701, which defined the "claims" collectible under § 3711, the statute reads:

"claim" or "debt" means any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency. A claim includes, without limitation—... (B) expenditures of nonappropriated funds, including actual and administrative costs related to shoplifting, theft detection, and theft prevention.

31 U.S.C. § 3701(b)(1)(B).

istrative costs in this area. *Id.* It is clear that the administrative costs charged to Defendant are not so "extreme and so divorced from the Government's damages and expenses as to constitute punishment." *Ursery,* 518 U.S. at 280, 116 S.Ct. 2135 (quoting *Halper,* 490 U.S. at 442, 109 S.Ct. 1892).

### III. Conclusion

Given the factors above, and considering the relevant statutes on their face, Defendant has not established by "the clearest proof" that the debt demanded by the Main Exchange suffices to override legislative intent and transform what was established as a civil remedy into a criminal penalty. For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss.

### ORDER

Upon consideration of Defendant's Motion to Dismiss, and the opposition thereto, it is this ___ day of **December, 2002,**

ORDERED that the Motion is hereby DENIED for the reasons stated in the accompanying memorandum opinion.